W. B. BRIEL et al. v. THE CITY OF NATCHEZ.

48  423
75  857
48  423
f85  312
48  423
f88  115

1. DEDICATION OF URBAN PROPERTY TO PUBLIC USE.—The American states, rapidly filling up with population, and new cities and towns constantly springing into existence, have not exacted as strict and solemn acts to affect the dedication of private property to public use as were exacted by the English law.  Here, the rule has obtained that if an urban proprietor has laid off lots intersected by streets, and sold them with reference thereto, or with reference to a map or plot dividing his property into squares, streets and alleys, such acts amount to a dedication of the streets and alleys to public use ; the vendees, in such cases, being considered as having paid the consideration for the dedication, and the dedication being considered an estoppel *in pais* which cannot be revoked.

2. SAME—ACCEPTANCE OF PROPERTY DEDICATED TO PUBLIC USE.—Land dedicated by a private owner to the public use, to be effectual, must be accepted, either by the formal act of the local municipal authority, or by implication from circumstances, reference being had to the use to which the dedication is to be appropriated, and it being unimportant that there should be a *user* following closely upon the dedication.

3. SAME—NON-USER—ADVERSE POSSESSION—LIMITATION.—A city, to whose public use property has been devoted by the owner, should not by *non-user,* even if continued for years, be held to have relinquished or abandoned the easement. To deprive the public of it there must be such open, notorious and continued individual use of the property as to give notice of adverse occupation and use.

4. EASEMENTS ACQUIRED BY LONG USER DIFFER FROM THOSE ACQUIRED BY DEDICATION.—An easement acquired by *user,* so long as to raise the presumption of an original license, imposes a servitude upon the property, and, to the extent of its efficient use, limits the proprietary rights of the owner of the fee.  Not so where the right of a city began in a substantive and formal devotion of the property to public use.  In the latter case, if the city should lose the easement by abandonment and *non-user,* the dedicator and his heirs, and not the grantees of adjacent lots or their assigns, would take the property by this dedicator's original title, discharged of the incumbrance.

5. CHANCERY—JURISDICTION.—Where the wrongful interruption of a public easement by private individuals involves the element of irreparable mischief, the inadequacy of damages at law to redress the injury, or a continual nuisance, equity will grant relief.

APPEAL from the chancery court of Adams county. WALKER, Chancellor.

On the 6th of June, 1871, "The city of Natchez," as complainant, filed, in the chancery court of Adams county, her bill of complaint against the appellants, W. B. Briel and L. Heine, and also against H. H. Hamilton, J. Kennedy and others unnamed, as "tenants and occupants of certain lands" therein mentioned.

The bill alleges that, on the 9th of December, 1809, the city of Natchez was re-incorporated with the corporate name of "The President and Selectmen of the city of Natchez," and who were, by the act of re-incorporation, vested with the power "to lay out, alter and establish all needful roads and highways leading out of said city, as far as the limits thereof, and to lay out and extend the streets of said city in such manner as shall appear expedient."

That on the first of January, 1819, and during a great many years before that date, amongst other established streets of said city, Front, now Canal street, and Second, now Wall street, ran between the lines of the squares of the city, parallel to the bluff and the Mississippi river, and having the direction of northeast and southwest, and that the said Wall street, by its connection with an old and established public highway then, and from time immemorial, had led out of the city to and beyond its corporate limits, and was then the only street on the southwestern side, leading immediately therefrom in this direction. That said Wall and Canal streets then extended on the side of the city as far as the latter had been laid out into squares; and that, for a distance of nearly a mile beyond its terminus, said public highway, with which it (the city) was connected, ran through vacant and uninclosed fields that had never yet obtained the character of urban property. That immediately, on leaving the city, the said highway runs through property of Charles B. Green, that extended a distance of more than 1,200 feet in the direction of said street, and on

the right of the street, and in a southwardly direction therefrom, as far as the Mississippi river, one of the exterior boundaries running to the river through property on the bluff, known by the name of Fort Rosalie.

That some time before the year 1819, "the said Charles B. Green, to obtain for his land the advantages of city lots, conveniently located upon streets connected with those already established, proposed to said corporation an extension of Wall and Canal streets, and their connection by a new street (to be called Green street), to be located on his land," and to connect the extension of Wall and Canal streets, and crossing. Canal street to be extended to the Mississippi river; and at the same time agreed to donate to the city corporation such land belonging to him as should be included within the boundaries of said new street, and the proposed extension of Canal and Wall streets, and that said proposal was accepted by said corporation by an ordinance passed, January 1, 1819, and thereby ordained the extension of Wall and Canal streets, and also "a street leading from the southwardly end of Wall street," after its extension to the river, and that this street commence at a post planted near the road then leading to to plantation of Jno. Girault, deceased, and be called Green street.

The bill then alleges that, immediately after the passage of this ordinance, the city entered upon and took possession of the lands included in said donation, laid out Green street and the extensions of Wall and Canal streets, and opened and improved them, so that they soon became appropriated, established and used by the public as streets and highways; that said Green soon after sold several lots on the extension of Wall street, and afterward, by several conveyances, sold all the land owned by him adjacent to the extension of Wall street and to Green street, and in all of his conveyances limited the boundaries of the land conveyed to the margin

of said streets, without including in the title of any alienee a right, in any event, to the soil of the street upon which the parcels were situated; and that the defendants, by *mesne* conveyances and by inheritance, have acquired parcels of said lands, holding the same by titles darraigned from said alienations and conveyances by Green.

The bill alleges the destruction of a part of the extension of Wall street by the encroachment of a bayou; that there was no necessity for said streets to be kept open, and the consequent neglect of the corporation, without closing or abandoning them, to keep said extensions and said Green street in repair.

The bill alleges the re-incorporation of the city by acts of March 1st, 1854, and July 20th 1870, by the title of "The city of Natchez," and its power to open, alter, establish, improve the streets, etc., within the city. It also alleges the necessity, in 1870, to resume the use of Wall and Green streets; the arrangements of complainant to purchase the right of way; the attempts to get forcible possession of said extension of Wall street and said Green street by the city; the refusal of defendants to give possession to complainant, or to be driven from their possession—their inclosures and improvements—by the complainant (the only obstructions alleged being "inclosures and other improvements" of the defendants); that the entry of defendants was without any color of title, and had its origin only in the *non-user*, etc., by the public, and that said entry and appropriation were made stealthily by the defendants, without any notice thereof to complainant, or notice of any intention, under title or color of right, in the defendants or any of them, to assume or exercise proprietary rights over the lands.

The bill prays that said nuisance may be abated and said defendants required to remove said obstructions,

or to submit to an order for their removal, and for per-
petual injunction, etc.

To this bill of complaint the defendants, W. B. Briel
and Lawrence Heine, demurred.

The demurrer was a general demurrer, and also con-
tained the following special assignments, viz.:

1. The bill of complaint does not show that these
defendants have any identity of interests with each
other, or with any other defendant, in the subject-
matter of the complaint.

2. The bill does not charge any confederation with
each other, or with any other of the defendants.

3. The bill does not charge any facts constituting a
nuisance.

4. The plaintiff shows no right in law or equity to
maintain this action.

5. The bill shows the title of these defendants to Green
street and to the extension of Wall street to be good
by prescription, and they insist upon the statute of
limitations, in such cases made and provided, as a bar
against this action of the plaintiff.

6. The bill is vague and indefinite in this, that it does
not show what lands or lots on Green and Wall streets
defendants owned separately, or jointly, or in common
with each other, or with any other defendant, or what
portion of Green street or of Wall street these defend-
ants, and each of them, had obstructed, or the kind of
obstruction.

The bill is otherwise informal, vague and defective.

The court below overruled this demurrer, the
defendants appealed, and in this court assign for error
the overruling of their demurrer by the court below.

*W. F. Mellen*, for appellants.

Viewing the claim set up by the city, as owner of
the soil included in these so-called streets, under the
act of donation, it is very clear that a chancery court

is not the proper court to oust the defendants from their possession. It is very clear that an action of ejectment in a court at law would be the plain and adequate remedy of the city. And whether the defendants held a joint possession of the lands, or a possession in severalty of distinct parts of the lands, there could be no appeal to the jurisdiction of a court of equity on account of any alleged multiplicity of suits. This point is too plain to require further comment. Rev. Code 1857, title, Ejectment; Nevitt v. Gillespie, 1 How. 108; ib. 558; ib. 510.

But looking on these so-called streets as public thoroughfares dedicated to the public, who has a right of action, and how and in what courts can such right be enforced? How can the obstructions complained of be abated?

We answer: 1. Whoever may have a right of action, the city of Natchez, in her corporate capacity, has not.

A town cannot maintain a bill to abate a nuisance injurious to the private interests of certain individual residents. Dover v. Portsmouth Bridge, 17 N. H. 200.

A town may, like any other property owner, maintain an action to abate a nuisance only by the averment of an especial grievance, not similarly affecting the public at large. Dover v. Portsmouth Bridge, 17 N. H. 200.

If the stopping of these streets by the obstruction of the defendants was, as is alleged in the bill of complaint, a public nuisance, then individual residents or citizens who suffered special damage thereby would have a right of action to abate the nuisance. Whitworth v. Rogers, 26 Miss.; Mayhew v. Norton, 17 Pick.; 3 Black. Com. 219, 220; 1 How. 7; 3 Greenl. Ev. 184.

The remedy for parties residing upon public thoroughfares, for injury done to property by obstructions of the thoroughfare, is by an action at law, and by a repetition of such action from time to time during the

continuance of the grievance. But this does not extend to mere inconvenience. Drata et al. v. Hudson River R. R. Co., 7 Barb. 508; 2 Story Eq., § 925.

The remedy in all such cases is at law and not in equity. Bradbury v. Manchester and Sheffield R. R. Co., 8 Eng. Law and Eq. 143 *et seq.;* Soltan v. De Held, 9 ib. 104; Earl of Ripon v. Hobart, 1 Cooper Sel. Cas. 333; S. C., Mylne & Keen, 169; Clark v. Wyatt, 3 Mer. 688; Caldwell v. Knott, 10 Yerg. 209; 5 Minn. 292; 1 Comyn Dig., title, Action on the Case; Codmar v. Evans, 7 Allen, (Mass.); Baten's case, 9 Co. 536; Fay v. Prentice, 1 C. B. 828; Wells v. Ody, 1 M. & W. 462: Scott v. Shepherd, 1 Smith Lead. Cas. 210, 218; Hudson v. Nicholson, 5 M. & W. 437; Holmes v. Wilson, 10 Ad. & El. 503; Laurence v. Ober, 1 Stark. 22; 1 Chitty Pl. (6th Am. ed.) 143, 159, 206.

A court of equity, on a bill in chancery filed by a private party directly and injuriously affected (not merely incommoded) by a public nuisance, will interfere to prevent further proceedings, but it will not cause the parties to undo what they have already done. That is the province of courts at law. See authorities already cited. There have been a few exceptions, a few cases where chancery has abated nuisances; but these exceptions were founded on the peculiar circumstances of the cases and do not vary the rule. See the State of Pennsylvania v. the Wheeling Bridge Co., 13 How. (U. S.); Robeson v. Pittinger, 1 Green. Ch. 570; Attorney General v. New Jersey R. R. & Trans. Co., 2 ib. 136; Jeremy on Eq., book. 3, ch. 2, § 1, p. 310; 1 Ves. 543; 2 ib. 414; Eden on Injunc., ch. 11, pp. 235, 235; 5 Minn. 292.

And even in Robeson v. Pittinger, 1 Green. Ch. 57, it is held that "it must be a strong and mischievous case of pressing necessity, or the right must have been previously established at law, to entitle a party to call to his aid the jurisdiction of chancery."

But besides the remedy of private persons affected by public nuisances, there are certain remedies within reach of the public, to wit:

1. The remedy by indictment, which is plain, adequate and complete. "Common law courts have an undisputed jurisdiction over public nuisances by indictment, and a court of equity ought not to interfere in a case of misdemeanors when the object sought can be as well attained in the ordinary tribunals." Attorney General v. New Jersey Railroad and Transatlantic Company, 2 Green. Ch. 136.

2. By information of intrusion at the common law.

3. By an information in equity. 3 Greenl. Ev. 184, 468; 3 Black. Com. 219, 220, 221, 222; 4 ib. 167; 7 Allen (Mass.) 431; 24 Cal. 359; 2 Story Eq. Jur., §§ 920, 921, 922, 923, 924.

But is the right of action barred by statute limitations?

To avoid the effect of a plea of prescription, the learned solicitor who drafted the bill of complaint ingeniously alleged that the entry upon the lands was stealthy and quiet, and concealed, and without color of title. But this is flatly contradicted by the other parts of the bill, which allege that the obstructions consist of "building and fences." Buildings and fences cannot be erected without an actual, open, visible and notorious occupation and use of the premises. When buildings and fences are erected, the entry and occupation cannot be stealthy or concealed. 37 Miss. 38; 39 ib. 737, 820; 1 McLean, 267; 11 Pet. 52; 44 Miss. 467; 8 S. & M. 77; 9 ib. 111; 10 ib. 440; 8 ib. 235.

Now, as the bill shows that the possession of the land in controversy was in the defendants prior to 1854, we submit that the plea of prescription is well taken.

Are the defendants' property joined?

The rule of joining parties to prevent a multiplicity

of suits is, where the subject-matter of contest is held by one individual in opposition to a number of persons who controvert his right, and who hold separate and distinct interests depending upon a ·common source, or with a view to put an end to vexatious and ruinous litigation where the party has satisfactorily established his right at law.   North v. Gillespie, 1 How. (Miss.) 108; see also Cable v. Martin, ib. 558.

A plaintiff cannot demand by the same bill several distinct matters against several defendants.   McNeill v. Burton, 7 How. (Miss.) 510.

*Winchester & North* and *W. T. Martin,* for appellee.

The appropriation of land in a town or city for streets, by survey and conveyance to adjacent proprietors conforming thereto is generally held by the authorities to be a dedication, which is of the nature and has all the force of a grant; and when the appropriation is accepted by the local authority and acted upon by public use, it is irrevocable by the owner of the fee.   Washb. on Easements, 188, 196–209; 6 Vt. 355; 10 Pet. 662; 1 Whart. 469; 27 Mo. 211; 18 Ohio, 18; 29 Mo. 356; 1 Sneed, 632; 9 Iowa, 455; 8 Minn. 494; 36 Penn. 99; 31 Conn. 321.

To constitute a dedication requires no grant or conveyance by deed or writing on the part of the owner of the land.   If he shall do such acts *in pais* as amount to a dedication, the law regards him as estopped *in pais* from denying that the public have a right to enjoy what is dedicated, or from revoking what he had thus declared by his acts.   Authorities above cited;  2 Smith Lead. Cas. (3d Am. ed.) 180, 181; ib. (5th Am. ed.) 209; 6 Pet. 431; 19 N. Y. 256; 7 Ind. 38; 15 Ill. 236; 35 Me. 161; 1 Rob. (Va.) 186; 9 Wis. 240; 8 Metc. 238; 3 Sandf. 502; 3 Cush. 294.

No prescribed length of enjoyment of the easement by the public is necessary to title by dedication.   All

that is requisite to constitute a good dedication is, that there should be an intention and an act of dedication on the part of the owner, and an acceptance on the part of the public ; and as soon as these concur the dedication is complete.  Ib.

An easement, having its origin in a grant or dedication, cannot be lost by *non-user*, however long continued, without an adverse possession.  3 Kent Com. 448.   In White v. Crawford, 10 Mass., the right of way was by reservation to the grantor in a deed-poll conveying the servient lands.   It was held that the right could not be lost by *non-user* or tortious interruption for any length of time.   And in Arnold v. Stephens, 24 Pick. 106, it was held that, in the case of a grant by deed of the right to dig ore in the land of another, the mere neglect of the grantee, for forty years, to exercise the right, without any act of adverse enjoyment on the part of the owner of the land, will not extinguish such right; and the occupation and cultivation of the land by the land owner during such period are not evidence of adverse enjoyment of the right to dig ore.   And in Doe v. Butler, 3 Wend. 149, Sutherland, J., said: " The presumption of a grant against written evidence of title can never arise from the mere neglect of the owner to assert his right."

A right of way will not be lost or extinguished simply by a discontinuance of its use; there must for this be an intention not to again, at any period, resume an exercise of the right.   Stokoe v. Singers, 8 Ell. & B. 31–39, cited in Washb. on Easements, 633; Perkins v. Dunham, 3 Strobh. 224.

In Lovell v. Smith, 3 C. B. N. S. 120, cited in Washb. on Easements, by agreement of the parties a new way was substituted for the old one, over the same land, and, after being used for a period short of twenty years, the question arose whether the old way was not lost; and there being no intention of abandonment, it was

decided that the right yet remained. In the same case it was held that, to work an abandonment of a right of way acquired by prescription, there must be a release by deed, or evidence from which a jury may presume a release. Wright v. Freeman, 5 Harr. & Johns. 467, 478. The rule must have greater reason and force in respect of a right of way acquired by grant or dedication proper.

Where a right is suspended by the act of God, as by the drying up of a spring, it will revive again if the spring chance to flow. Taylor v. Hampton, 4 McC. 96.

The mere *non-user* of a privilege in land granted or reserved, where there is nothing in the grant to show that it was to be exercised immediately, would not deprive one of his right; and where the terms of a grant or reservation do not require the right to be exercised at once, no mere lapse of time, during which it is not exercised, can be deemed evidence of an abandonment. Butz v. Ihrie, 1 Rawle, 218, 222; Yeakle v. Nace, 2 Whart. 123.

In Doe v. Butler, 3 Wend. 149, 153, the court said: "Presumption of a grant against written evidence of title, can never arise from the mere neglect of the owner to assert his right, where there has been no adverse title or enjoyment by those in whose favor the grant is to be presumed, for the obvious reason that the presumption of the person showing title which arises from the delay in asserting his title, is equally balanced by the like presumption arising from the same delay on the part of the supposed grantee."

In Ward v. Ward, 7 Exch. 838, cited in Washburn, 645, it was said that, "the presumption of abandonment cannot be made from the mere fact of *non-user;* there must be other circumstances in the case to raise that presumption. The right is acquired by adverse enjoyment. The *non-user,* therefore, must be the consequence of something which is adverse to the *user.*"

And in that case the presumption was effectually met by showing that the owner of the close, for which the right of way was claimed, had had a more convenient and easy access to it in some other way during the time of the cessor to use the way.

Of the right and capacity of the appellee to bring this suit, there should be no doubt. The power over the streets within its limits, its power to open new, and to improve and keep in repair all, streets and highways within its corporate boundaries, is without limitation or exception; and, moreover, the acceptance of the grant and dedication of Green imposed upon it a duty in the nature of a trust, making it obligatory upon it to secure to the public generally, and especially the parties concerned, the enjoyment of the right in question.

In Brainard v. Conn. R. R. Co., 7 Cush. 506, it was decided that the party, to whom the state has committed the power and duty of laying out, keeping in repair, etc., roads, such as the mayor and aldermen of a city, must sue. "It seems to be now settled that the proper authority to take charge of what has thus been actually dedicated is the local corporate body within which the same is situate." 2 Smith Lead. Cas. (5 Am. ed. 222); Trustees of Watertown v. Cown, 4 Paige, 511; Commonwealth v. Albergers, 1 Whart. 469, 485; City of Cincinnati v. White, 6 Pet.

SIMRALL, J.:

Was there a dedication of the extension of Wall and Canal streets and of Green street to the public? Green, the proprietor of the land over which the extension and the new streets was made, proposed to the city of Natchez to lay out these streets; the offer was formally accepted by the city. Afterwards Green sold and conveyed parcels of the property bounding the lots on the streets.

The difficulty of supporting a dedication of private property for public use grew out of technical requirements of the common law, and the restrictions of the statute of frauds in creating and transferring estates and interests in real estate.  The trouble was, how to alienate that which passed by grant without a deed; and after that trouble was got over another presented itself: there must be a donee as well as a donor, and who was the donee consenting to accept the grant in case of a dedication?  See Vick v. Vicksburg, 1 How. 427, *et seq.*  In 19 Johns. 186, the laying out of streets by a proprietor over his land, and selling off lots with reference thereto, is assimilated to a contract. The proprietor engages to give the ground for the streets, according to his plat, upon the condition that the public shall accept and ratify it.  Such acts are irrevocable; it is too late after they are done to resume absolute control over the property thus devoted to the public use.  Nor is it necessary, in order to manifest a " ratification " or acceptance of the dedication, that the municipal authorities should presently open the streets; that may be posponed until the advancing population and private improvements make it necessary.  1 Wend. 487; ib. 270.

No particular time is necessary as evidence of a dedication; as, if a man builds a double row of houses opening into an ancient street at each end, and sells or or leases the houses, the intervening space becomes instantly a highway.  Woodyear v. Hadden, 5 Taunt. 125.

In this country, so rapidly filling up with population, new cities and towns springing up as emigration and settlement advance, it might well be expected that there should be such applications of the English doctrines of prescription and dedication as would comport with the new circumstances.  We could not, without great public inconvenience, exact as strict

and as solemn acts of dedication, and as long a *user* by the public, as in the old country. The rule has obtained general sanction, that, if the owner of urban property has laid it off into lots intersected by streets, and sells the same with reference thereto, or with reference to a map or plat dividing it into squares, streets and alleys, such action will amount to a dedication of the streets and alleys to the public. Irwin v. Lewis, 9 How. (U. S.) 10; Rowan v. Portland, 8 B. Monroe, 232; Vicks v. Vicksburg, 1 How. 379. The vendees will be considered as having given a consideration for the dedication. Godfrey v. City of Alton, 12 Ill. 29. If, at the time, the town or city has no corporate existence, the right to use the streets and control over them will vest in the corporation so soon as created. Waugh v. Leach, 28 Ill. 488. Such dedications are considered as estoppels *in pais*, which cannot be revoked, as it would violate good faith to the public as well as to those who have acquired rights with a view to the enjoyment of the easement. Cincinnati v. White, 6 Pet. 421. The estoppel *in pais* conveys no larger meaning, than that the proprietor has done such acts of dedication as that the public and individuals, who have acquired private rights, would be misled and deceived, if he were permitted to aver that his acts had another purpose and intent.

To consummate a dedication, there must be also an acceptance, either by the formal act of the local municipal authority, or it may be inferred or implied from sufficient circumstances. People v. Jones, 6 Mich. 176; Fulton Village v. Mehrenfield, 8 Ohio St. 440.

The dedication of the streets in controversy, and the acceptance by the city, are distinctly stated in the bill. Has the city lost its rights by *non-user?* Can the statutes of limitations be applied to this case?

Dedications of private property to the public enjoyment must always be considered with reference to the

use to which the thing is to be appropriated—whether the easement is of a highway, a street, a common, or a park ; all rest upon the same general doctrine.   Nor is it necessary that there should be a *user* following closely upon the dedication, as where streets are extended over suburban property.   It may be years before the convenience of the public, or of those who live upon adjacent lots, on account of the paucity of population, requires that they should be formally taken in charge by the municipal authorities.   Such dedication of streets in a growing town must have such an interpretation as will comport with the common understanding.   The proprietor of the ground ought to be held as proclaiming and offering to the public to change his property from rural to urban, to sell it in small parcels with reference to streets and squares.   Because the neighborhood is not rapidly settled up, and years may elapse before the city undertakes to work and grade the streets, or before the necessity arises, the city should not, by such *non-user*, be held to have relinquished the easement and abandoned its acceptance of the dedication.   Such form of dedication as that set forth in the bill is equivalent to a grant; to deprive the public of it, there must be such open, notorious and continued individual use of the property as to give notice to the city of adverse occupation and use.   It must have been so open, notorious and hostile as to have compelled the city to acquiesce in it, or to have interposed to save its rights.   If there has been this sort of defiant occupation and use, referable to an adversary claim, and continued long enough, then the presumption may arise that the city and the public have relinquished or abandoned its rights.

The complainant alleges that after Green, the proprietor, had devoted these streets to the public use, the city for some time continued to use them, keeping them in repair; that as the necessity to keep them in

order ceased, they were neglected; nor did the convenience of the public and residents require that these streets should be re-opened until shortly before the bill was filed. The dedication by Green and the acceptance occurred .in 1819; when the *non-user* begun is not stated. The obstructions put by the defendants on the line of the streets are averred to have been clandestine, not such as to notify the complainants that they were the assertion of the proprietary rights by them. From the allegations of the bill enough does not appear to warrant the conclusion that a conclusive presumption of relinquishment or the bar of the statute of limitations has attached. Indeed, the complainant makes allegations to obviate the effect of *non-user*, and to avoid the bar of the statute.

But the city of Natchez does not claim, as against the defendants or him or those under whom they derive title, an easement, acquired by long use, so as to raise the presumption of an original license. An easement thus acquired imposes a servitude upon property, and, to the extent of its efficient use, limits and abridges the proprietary rights of the owner of the fee. The right of the city to the enjoyment of these streets does not arise out of long use, nor is it vindicated by prescription merely. The defendants are not the owners of the fee of the streets, subject to the servitude of the easement; nor was this servitude acquired by prescription against the original proprietor. The right of the city begins in a substantive and formal devotion of the property to the public use. As against Green, the dedicator, it is of equal consideration in law as a grant. The dry fee of the servient property remained in Green. The sales and conveyances of the adjacent lots stopped at the margin of the streets. If the city had lost the easement by abandonment and *non-user*, Green, or his heirs, would take the property by the original title discharged of the incumbrance of the servitude. The

defendants, never having succeeded by *mesne* conveyances to Green's title to the fee of the streets, cannot set up title in themselves by abandonment and by relinquishment of the city. They might, perhaps, enter upon the soil, asserting a claim thereto, and by notorious public acts of exclusive ownership oust the city and toll Green's heirs of their right. But to perfect a title by ouster and adverse possession against the city, it is not enough merely to put the soil of these streets to some private use, whilst the *locus in quo* was not needed for a highway, but such appropriation and use must be under a color of title in themselves, hostile to the city, and an assertion of exclusive proprietary rights in themselves.

The last point made by the appellants is, whether this a proper case for equity jurisdiction.

It is said that the "right" of the city ought first to be established in a court of law. It is conceded by Judge Story, 2 Eq. Jur., § 925 *d*, that the American courts have departed from the more rigid English rule on this subject, proceeding, perhaps, on the idea that the rights of all parties can be as well protected in the one tribunal as the other. But in all cases of suits in chancery, in the first instance, there must be the element of irreparable mischief, or the inadequacy of damages at law to redress the injury, and also the feature of a continuation of the nuisance so that there is something of the feature of perpetual injury. The right of the complainant also must be clear. In Commonwealth v. Rush, 14 Penn. St. 186, the bill was sustained, where a private building was erected upon land reserved for a public square, and which had been illegally sold by the authorities. The like remedial interposition will be made against the obstruction or pollution of water-courses, the diversion of streams from mills; so the enjoyment of public places will be protected against encroachment. Lewis v. Stein, 16

Ala. 214; Wolfe v. Frost, 4 Sandf. Ch. 72; Fish v. Wilber, 7 Barb. 395; Frink v. Laurence, 20 Conn. 117; Robinson v. Byron, 1 Brock. 588; Universities of Oxford and Cambridge v. Richardson, 6 Ves. 706; Hills v. Miller, 3 Paige, 254; 2 Story Eq. Jur., §§ 926, 927.

If there be a well-founded doubt of the right of the city to the *user* and control of these streets, the chancellor may hold up this suit until the city has established its right, and the complainant may be required to test and settle his right at law.

We think that there is no error in overruling the demurrer.

*The decree is affirmed.*