F. T. SANFORD et al. vs. MAYOR AND ALDERMEN OF MERIDIAN.

1. DEDICATION: *Municipal authorities. Streets. Donations.*
A dedication of a street, like every other conveyance of property, requires two parties—a grantor and a grantee. The one must accept and the other convey. The acceptance is evidenced either by the action of some civil authority, representing the public, or by a purchase of lots by private persons, based upon the dedication, or by some *use* of the property by the public, which implies an acceptance and estops the grantor.

2. SAME: *Case in judgment.*
In 1858 one R., owning a large tract of land near the present city of Meridian, caused his land to be laid off into town lots, streets, etc., and a map thereof to be made. This map he acknowledged and had recorded. In 1867 the town began to grow, and R. prepared another survey and map, making some change. That portion of the old survey wherein was M street was an old field, unoccupied except on one lot was a Baptist church. In the last survey the width of M street was reduced from eighty to sixty feet. This survey

was presented to the mayor and aldermen, and by them accepted, the ordinance reciting that "M street shall be established as an eighty feet street." A bill was filed by certain citizens, claiming to own land on this street, to enjoin the corporate authorities from enforcing this ordinance. *Held*, that R. had made no valid dedication of the street up to the time of the second survey; that he had the right, with the assent of his vendees, to change the proposed width of M street; that this change had been acquiesced in by the city and the public, and that the recital in the ordinance that "M street was thereby established as eighty feet wide" was *ultra vires* and void.

[NOTE.—Grave doubts are expressed by the court whether a court of equity has any jurisdiction over an order of a municipal corporation touching its streets, but the question, not being discussed by counsel nor necessary to the decision reached in this case, is not decided.]

APPEAL from the Chancery Court of *Lauderdale* County .
Hon. THOMAS CHRISTIAN, Chancellor.

The facts in this case are very fully stated in the opinion of the court.

The following is assigned for error : " The court below erred in dissolving the injunction in this case and dismissing the bill filed by complainants and entering judgment against them for costs."

*W. H. Hardy*, for appellants :

The question presented is, was there a dedication of Mississippi street to the public use by Ragsdale, the proprietary owner of the soil? Dedication is defined to be " solemn appropriation, and may be express or implied." 1 Bouv. L. Dic., 386. It may be implied from the acts of the owner. 11 East, 376 ; 12 Wheat., 585 ; 11 Pet., 662 ; 2 Watts, 23 ; 12 Wend., 172 ; 11 Ala., 63–81 ; 24 Pick., 71 ; 6 Pet., 431. There is no particular form or ceremony necessary in a dedication of land to public use. City of Cincinnati *v.* White's Lessees, 6 Pet., 440. See, also, 3 Bing., 447 ; ib., 431 ; 10 Pet., 662 ; 6 ib., 498. If a street be designated by public commissioners. 3 Kent, 588. See, also, 1 How., 379. Where the public assumes a general control of the property. 39 Miss., 389. The rule in New York. See 2 Wend., 472 ; 8 ib., 85 ; 11 ib., 486 ; 4 Paige 510. When land has been

dedicated and accepted, as a public square, and individuals have built houses with reference thereto. 3 Washb. on Real Prop., 61.

*B. Y. Ramsey,* for appellees :

1. The right to easement can only be acquired by the public either by absolute grant or dedication by the proprietor of the soil, or by *user* on the part of the public, with the consent of the owner.

2. There can be no complete dedication of private property to the public, conferring the right of easement and divesting the owner of control, until there is *acceptance* by the public.

3. Such acceptance may be formal in case of a public or municipal corporation. It may be expressed by some act of recognition and acceptance by the corporation, or it may be implied by actual *user* on the part of the public, with the assent of the owner.

4. Until there is some such public acceptance the proprietor of the soil may revoke the dedication altogether; *a fortiori* he may modify it to conform to a change of circumstances, or to a change of purpose on his own part.

5. The mere surveying or laying off lots, with a contemplated street between them, conveys no right until such street is actually opened to the public use, or until lots are sold in reference to such contemplated streets, and until such sale or *user* the street remains the private property of the owner, and under his control.

6. Even when lots are sold by the proprietor in reference to such contemplated street, and before *user*, with the assent of the grantees he may change the survey of such street if he should find it necessary or proper to do so.

These principles of law are submitted as applicable to this case. They are sustained by the following, and numerous other authorities : Vick *v.* Vicksburg, 1 How., 379; Cincinnati *v.* White's Lessees, 6 Pet., 431; Bissell *v.* N. Y. C. R. R. Co., 26 Barb., 634; Child *v.* Chappell, 5 Seld. (N. Y.); Holden *v.* Trustees Cold Spring, 23 Barb.; Curtis

v. Hoyt, 19 Conn., 154; David v. Municipality, 14 La. An., 872; Mazzy v. Davis, 54 Me., 361; Oswego v. Oswego Canal Co., 6 N. Y., 257; U. S. Dig., 1st series, vol. 6, p. 467, §§ 140, 141; 10 R. I., 437; Washb. on Ease., 202, §§ 30, 31; 2 Greenl. on Ev., § 662; Britt v. City of Natchez, 48 Miss., 423; 1 Wend., 262; 4 Cow., 542.

CHALMERS J., delivered the opinion of the court.

Five citizens of the city of Meridian filed their bill to enjoin the corporate authorities thereof from the enforcement of one clause of an ordinance of the mayor and board of aldermen, accepting and adopting a survey and map of the city which had been prepared, under an ordinance of the board, by one Currie. The ordinance adopts and establishes said survey and maps as constituting, with certain exceptions in the ordinance specified, the true plan of the lots, streets, alleys, and squares of the town. One of these exceptions is in these words: " Provided, further, that Mississippi street shall be a sixty-feet street, as originally laid off, and not an eighty-feet street, as provided in said ordinance of March 2, 1867."

It is to this proviso that objection is made by complainants. They claim that its effect will be to reduce a street which has heretofore been eighty feet wide to a width of sixty feet, and thereby greatly damage the property located thereon. The prayer is that the carrying out of this proviso be perpetually enjoined, and the proviso itself annulled and vacated.

The city, in its answer, denies that said street is now, or ever was, eighty feet wide; denies that complainants have any property whatever on said street, or that they or any other person can possibly be damaged by the official establishment of the width of the street at sixty feet. It would seem that questions of physical and historical fact so open and notorious as those thus raised should be susceptible of easy settlement. On the contrary, the record leaves us in much doubt as to what is the truth about them. Complainants testify that they are considerable property holders on Mississippi street, and

one of them deposes that his property on that thoroughfare is worth from $8,000 to $12,000. On the contrary, several witnesses for the city, who, we take it, are undoubted property-holders on the street, depose that not one of the complainants own a foot of property thereon, and that the property of the one claiming to own $8,000 to $12,000 worth is situated on a different street altogether. Complainants and their witnesses testify that the street is now, and ever has been, eighty feet wide. Defendants' witnesses aver with equal positiveness that the street is now, and ever has been, of sixty feet width only.

The witnesses on neither side were cross-examined, but each party seems to have been content to let the other prove whatever his witnesses could be brought to depose, without the solitary check of a cross-examination.

Under these circumstances we feel compelled by the decree of the learned chancellor, who, we may be permitted to remark, is himself a citizen of the town, to adopt defendants' theory of the facts upon which the merits of the case depend. These facts may be stated as follows: In 1858 two railroads in process of construction were rapidly approaching the site of the present city of Meridian. One Ragsdale, the owner of a large tract of land thereabouts, caused his land to be laid off into town lots, with streets and alleys and squares, and a map thereof to be prepared, which map he acknowledged as his act and deed, and had the same recorded in the probate clerk's office in the county. He located this imaginary city at and around the point where he supposed that the two approaching roads would intersect and cross each other, and to it he gave the name "City of Ragsdale." Upon this map a street was laid off, designated Mississippi street, and marked as being eighty feet wide. When the roads actually reached the vicinity, they crossed each other at a different point from that anticipated by Ragsdale, though perhaps not very far distant. A small village sprang up around the intersection, which took the name "Meridian." Whether it covered any part, and if so, what part, of the land laid off on the Ragsdale map (known as

the Vosburg map or survey, from the name of the surveyor who made it) does not appear. Certainly that portion whereon was marked Mississippi street was not embraced within this new village. At what period the place was incorporated by the legislature does not appear, nor whether the ground designated as Mississippi street was embraced within its incorporated limits. After the close of the civil war the town began to grow, and in 1867 Ragsdale resolved to prepare, and did have prepared, a new map of his survey. In this map were made many changes from the old one. That portion of his land where Mississippi street was designated was still an old field, wholly unoccupied except that there was being erected upon a lot lying thereon, which he had donated for the purpose, a Baptist church.

It was Ragsdale's intention to make no change in Mississippi street, but when it came to be run out by the surveyors, at a width of eighty feet, it was found to infringe upon the church edifice.

The authorities of the church thereupon requested him to reduce the street to sixty feet, which was the width of the connecting streets. He had already sold three lots on the street, but upon them no buildings had been erected. He said that if the vendees of these lots would consent, he would alter the street; all of them then consenting, the street was run out by the surveyors at sixty feet, and so marked on the new map. This is the testimony of Ragsdale and of one of the officers of the church, who still survives, and both of whom testify that the street has ever since been recognized and treated as being of that width.

The map of this survey (Robertson & Currie survey) was by Ragsdale presented to the board of mayor and aldermen, and by them accepted by ordinance of March 2, 1867. Said ordinance recited, however, that "Mississippi street shall be established as an eighty-feet street." From that time to the present the matter seems to have stood in this attitude.

The street remains to this day, as we gather from the record,

quite on the outskirts of the town, and is but little settled. The principal buildings on it seems to be on the three lots sold by Ragsdale, in 1866–67, to the parties at whose instance and with whose consent the new survey was run out at sixty feet, and the present holders of this property seem to insist that it is a sixty-feet street.   Other inhabitants of the town, among whom are complainants, seem to have regarded it as an eighty-feet street.   The chancellor appears to have concurred with the former, since he recites in his decree that " the complainants have failed to establish the allegation of their bill by proof."   We cannot say that he was wrong.

It is argued, however, that Ragsdale, having by the original Vosburg survey dedicated the street as one of eighty feet, had no power, without the consent of the municipal authorities, to change the width, and that this consent was expressly refused by the ordinance of March 2, 1867.

This is assuming that there had been a binding dedication by the Vosburg survey.   If, indeed, there had been, it would have taken, perhaps, both the assent of the town authorities and of the local lot owners on the street to have authorized the change.   But was there a binding dedication under the Vosburg survey?

That was a survey of the proposed city of Ragsdale.   It covered, in part at least, different territory from that now embraced in the city of Meridian.   How much of it is occupied by the present city, and when it was taken within the limits thereof by actual settlement, or by acts of incorporation, the record does not disclose.

The map of said survey was never offered for acceptance to the authorities of the new town.   No lots were ever sold, bounded by Mississippi street as an eighty-feet street, except the three above referred to, and if the public ever acquired any interest in it, as an easement, it was only as a road staked off, leading through an old open field out of the town.

We do not think this meets the requirements of a valid dedication.   A dedication, like every other conveyance of

property, requires two parties—a grantor and a grantee; the one must accept and the other convey.

The acceptance is evidenced either by the action of some civil authority representing the public, or by a purchase of lots by private persons, based upon said dedication, or by some use of the property by the public which implies an acceptance and estops the grantor. Vick v. City of Vicksburg, 1 How., 380; Briel v. Natchez, 48 Miss., 423; People v. Jones, 6 Mich., 177; Oswego v. Canal Co., 2 Seld., 257; Badeau v. Mead, 14 Barb., 329; Underwood v. Strayvesent, 19 Johns., 181; Washb. on Ease., 202.

Several of the authorities, as well as numerous others, hold that there can be no dedication of a street, as such, without the concurrent action of the municipal authorities, for the reason that this would enable private persons to establish streets at their pleasure, which would be against public policy. Without deciding this question, we are satisfied that in the case in hand Ragsdale had made no binding dedication of Mississippi street up to the time of the second survey; that he had the right, with the assent of his three vendees, to change its proposed width, which change we think, following the opinion of the chancellor, has since been acquiesced in and recognized by the city and the public. It follows that the recital in the ordinance of March 2, 1867, that Mississippi street was thereby established as eighty feet wide, was *ultra vires* and void.

There are grave doubts whether a court of equity has any jurisdiction over an order of a municipal corporation touching its streets.

The question was not discussed in the arguments of counsel, and the conclusion which we have reached upon the merits does not require us to pass upon it.

Let the decree dismissing the bill be affirmed.