JOHN KINNARE ET UX. *v.* THOMPSON GREGORY ET UX.

1. HIGHWAYS. *How established.*

A highway may be as effectually established by a dedication by the owner or owners of the freeholds over which it is to pass, and the acceptance thereof on the part of the public, as by the mode prescribed in the statute. The dedication may be either by a formal grant, or by any such acts as manifest the intention of the freeholder, or freeholders, that the community shall have and enjoy a highway on their private property. The acceptance may be made either by the officials competent to represent the public, or may be implied from circumstances — such as user, etc.

2. SAME. *Statutory mode of establishing. Its object.*

Our statute prescribing a mode for establishing public roads was not designed to prohibit, or interfere with, the common-law methods of establishing highway easements, but was intended to define a method by which the state might compel a private owner to yield such an easement to the public. The statutory proceeding is a formal method of "taking private property for public use."

3. SAME. *Dedication accepted by board of supervisors.*

Where the owner of a freehold manifests his intention to devote a certain described road on his premises to the use of the public, and the county Board of Supervisors, by a formal order declaring the road to be public, accepts the proffered easement, such road thence becomes a highway.

4. AGENCY. *Evidence. Declarations of agent.*

In an action against a principal for acts done through an agent, it is incompetent to prove the fact of agency by evidence of the declarations of the supposed agent made to the witness.

5. HIGHWAY. *Action for obstructing. Evidence.*

In an action by G. against K. for obstructing a public road and depriving the plaintiff of the use thereof, it is competent for the plaintiff to prove by A. that, in trying to travel the road, the witness had been prohibited by K. to do so, and that they had an altercation in regard to the matter, in order to show that

the obstruction of the road was not for a temporary purpose, but was intended as a denial of the right of the public to travel there.

6. SAME.   *Action for obstructing.   Evidence.*

It is competent, in an action by one person against another for obstructing a highway, for the plaintiff to prove that, in consequence of the acts of the defendant and his sons, the overseer was prevented from working the road, and that thereby the public was deprived of its use.

ERROR to the Circuit Court of Warren County.

Hon. UPTON M. YOUNG, Judge.

The case is sufficiently stated in the opinion of the court.

*Murray F. Smith,* for the plaintiffs in error.

1. The court erred in admitting as evidence the order of the Board of Supervisors of Warren County, of July 10, 1875. Section 2334 of Code of 1871 declares that all roads laid out and opened, or hereafter laid out and opened, according to this chapter, shall be deemed public roads or highways.   The Supreme Court, in the case of *Tegarden* v. *McBean,* 4 Geo. 288, in construing an exactly similar section in Hutchinson's Code, page 254, section 25, says " that this amounts to a legislative declaration of what shall be a public road, and excludes all others."

In the same case the court says : " It is to be presumed that if a road is necessary for the public convenience to be established as a public one, the Board of Police will perform their duty, and take the proper steps to constitute it a public road ; and if there be no such declaration by that body, the road, though open to public use, could be considered in law but a private road."   The question, therefore, is, Did the board, by the order of July 10, 1875, take the proper steps to constitute this road a public road?

The authority conferred by chapter 53 of the Code of 1871, page 511, is special and limited, and must be strictly construed by the board, or all its acts are absolutely void.

Section 2336 prescribes the proceedings which the owner of land is to adopt in order to lay out a public road over his land,

and it also provides what steps the board shall take in order to carry out the wish of such owner.

If the Board of Supervisors do not follow the procedure prescribed by law, all their acts are absolutely void, and any person affected thereby may take advantage of the same in an action of trespass. 1 Chitty's Pl. 183, 184; Walk. 74; *Davison* v. *Gill*, 1 East, 64.

This order of July 10, 1875, does not show that it was granted on the petition of ten or more freeholders; it does not show that seven freeholders were ordered to view the route and see if it was practicable; it does not show that any such freeholders ever reported to them; it does not show that the order was made at the instance of any person whatever, and to all appearances was an *ex-parte* proceeding. The order is, therefore, void; it proves nothing; it is entitled to no more weight than a piece of blank paper. It is no fact. No legal inference can be drawn from it. It was error to allow the jury to consider it.

If the proper legal steps had been taken by the board before making this order, it was the duty of plaintiffs, upon the objection of defendants, to show them. When a party desires to avail himself of an order or decree as evidence, the whole record must be produced, and not merely the final order or decree. *Goddard* v. *Long*, 5 Smed. & M. 782; *Dogan* v. *Brown*, 44 Miss. 235; *McKnight* v. *Dozier*, 44 Miss. 606.

2. The court erred in admitting the evidence of Allein as to the declarations by Thomas Kennare, that he was the agent of his mother. In Story's Commentaries on Agency, 6th edition, section 137, it is said " that the fact of agency, or the extent of the authority, cannot be proved by the declarations of the alleged agent, although accompanied by his acts as agent." See, also, Whart. on Ag., secs. 44 and 163, and cases cited.

3. The court erred in admitting the evidence of Allein as to the altercations between himself and John and Thomas Kennare. We submit that this evidence was irrelevant and calcu-

lated to prejudice the jury against the defendants.   It was competent for Allein to testify as to his being prevented from traveling over the road ; but any quarrels that he may have had with John Kennare and Tom Kennare had nothing to do with the issue between plaintiffs in error and defendants in error.   1 Greenl. on Ev., secs. 51–53.

4. The court erred in admitting the evidence of Allein as to his attempts to work the road as overseer.   The bill of exceptions shows that the court had ruled out the appointment of Allein as overseer as void, but he was, nevertheless, allowed to testify that, acting under a void authority, he attempted to work the road.   If his authority to act was void, of course his acts were void, and no one can claim any benefit from it.

5. The court erred in admitting the evidence of Gregory as to his attempts to work the road as overseer.   Gregory was appointed overseer by the order of July 10, 1875, and if this order was void, as we contend in our first exception, then the acts done under this order are void, and defendants cannot claim anything by them.

6. The court erred in refusing the second charge offered by defendants.   This charge reads as follows :   " The jury are instructed that a private way can only be used for the purposes intended by the party creating the same, and when it is intended by the grantor to be a means of ingress and egress for the grantee, it can only be used by the grantee, his family, his guests, and those who may have occasion to visit his place on business, and can only be worked and repaired by the grantee, his family, and hired labor.   If the jury shall, therefore, believe that the road in question was intended as a private way to and from plaintiffs' property, and that the plaintiffs attempted to work it as a public road, and for that purpose summoned hands with plows, shovels, and wagons, then they are instructed that the defendants had a right to stop work done by such hands, and in this manner, and that plaintiffs cannot

claim any advantage from such attempts to put said road in repair." To sustain the correctness of this charge, plaintiffs in error cite 2 Washburn on Real Property, 2d edition, marginal pages 50, 51, and 52.

7. The court erred in refusing the fifth and sixth charges asked by defendants. These two charges are to be taken together, and read as follows: " The jury are instructed that the declaration that a road shall be public, or the grant by a person of a piece of land for a public road, does not make it a public road, but that it is necessary for such a road to be accepted by the Board of Supervisors. Unless the jury shall, therefore, believe that the Board of Supervisors of Warren County accepted the road in controversy as a public road, it is not such a road as will entitle the public generally to travel over it."

8. " The jury are instructed that, before the Board of Supervisors can accept a road offered to them as a public road, it is necessary for them to appoint seven disinterested freeholders or householders, residents of the county, who shall proceed to examine and view the contemplated route of said road, and to report to them, in writing, if the route is practicable, and, unless the jury shall believe from the evidence that such commissioners are appointed, and that they viewed and examined the road in question, then they are instructed that they will find that this is not a public road, but a private way only."

The fifth charge asked for by defendants is warranted by the case of *Tegarden* v. *McBean & Kibbee*, 4 Geo. 283. The sixth charge asked by defendants should have been granted. See Rev. Code 1871, sec. 2336.

This section expressly provides that the board shall not declare a road public until seven freeholders, or householders, shall view the route and report that the same is practicable. This is a wise provision, as it prevents the board from accepting the statements of interested parties, and renders it impossi-

ble for the board to burden the county with the expense of
maintaining and repairing a road which can be of no use to the
public at large.

*Bev. B. Myles*, for the defendants in error.

1. It is assigned for error that the court admitted in evi-
dence the order of the Board of Supervisors of July 10, 1875.

To predicate error of this, plaintiffs in error must show,
first, that they had a right to deny the public character of the
road; and, secondly, that no public road can be created save
by the formalities required in the Code for laying out a public
road through private property. The old case of *Tegarden* v.
*McBean & Kibbee*, 4 Geo. 289, is cited in support of the sec-
ond proposition, and the remark of the court, which was not
necessary to the decision of the case, that "they (the pro-
visions of the statute) amount to a legislative declaration of
what shall be a public road, and exclude all others," is relied
on as applicable to this case. No authority is cited in sup-
port of this remark, and the point in that case was essentially
different from the one here. There the appellees were the
purchasers from McMasters, the owner of the land over which
the public had been permitted by him to travel, and the court
say: "As McMasters might have resumed the possession
of the way at any time, his vendees were privileged to do
so too."

We think that when Brander laid off this road, and declared
in his deeds of the lots along it that it should be public, and
when the Board of Supervisors of Warren County, on July 10,
1875, "ordered that road No. 8, commencing at a point
where the county road crosses the V. & M. R. R. on the Bald-
win's Ferry Road, running through the Barefield tract, and
ending at point 'D,' on a plat of said land, as recorded in
deed-book F F, pages 650 and 651, Warren County records,
be declared a public road, and that T. S. Gregory be appointed
overseer of said road," then this became a public road for all
purposes; not by virtue of the provisions of the Code of 1871,
section 2334 *et seq.*, but a road dedicated by express grant,

formally accepted. by the Board of Supervisors, which accept-
ance was authorized by their constitutional jurisdiction in
such cases.   Cook's Man. Highw. Laws, 246 ; Thompson on.
Highw. 46, 249, 547.   "An acceptance may be made by a
formal act of the body charged with repairing the highway,
or by any act on its part sufficiently implying its acceptance."
Ang. on Highw. 174.   If this be so, there was no error in the
admission of the certified copy of the order, which was only
admitted as a single fact, to be taken by the jury in connec-
tion with the other facts tending to establish a public road.

2.  It is said that the court erred in allowing the agency of
Thomas Kinnare to be established by his declarations.   The
agency of Thomas Kinnare was shown by circumstantial evi-
dence.   He lived and worked with his father and mother.   He
was seen, with the other hands, erecting the fence which his
mother ordered Allein to desist from pulling down where it
crossed the road in controversy.   Considering that Mrs. Kin-
nare was an old woman (the mother of belligerent sons),
and the improbability, on that account, of her having any-
thing to do with the actual manual labor of erecting the fence,
the jury must have regarded this as sufficient authority to
Tom Kinnare, whose declaration only corroborated, and did
not establish, the fact of agency.

3.  The third error assigned is the admission of Allein's tes-
timony as to the personal altercations between himself and
John and Tom Kinnare.   But. this evidence was ruled out,
the court ruling that " personal altercations not between par-
ties to this suit are inadmissible."

4.  The fourth and fifth assignments of error are for the ad-
mission of evidence as to the attempts of Allein and Gregory
to work the road as overseers.   If the road was public, this
evidence was admissible anyway ; but the circuit judge only
admitted this evidence to show that the road would have been
worked but for the defendants' opposition, leaving the ques-
tion whether this was a public road or not to the jury.

5.  There was no error in refusing the second charge asked

by defendants. The defendants had no color of title to the ground over which the road ran. How, then, could they, under any view of this case, claim a right to stop work on the road by anybody?

6. The court properly refused the fifth and sixth instructions asked by the defendants. These instructions go together and depend upon the questions involved in the first assignment of error. They assume there was no dedication legally accepted, and a proprietorship in the land over which the road ran vested in Kinnare and his wife.

SIMRALL, C. J., delivered the opinion of the court.

John and Jane Kinnare, husband and wife, were sued by the plaintiffs below for obstructing the public road, and preventing the use of it by them. The plaintiffs offered testimony tending to show special damages to them. A verdict and judgment was rendered against the defendants for $400.

The important question (inasmuch as it lies at the foundation of the plaintiffs' right) was the admission in evidence of the order of the Board of Supervisors dated July 10, 1873, over the objection of the plaintiffs in error. This order declared that the road No. 8, therein described, " be declared a public road, and that F. S. Gregory be appointed overseer of said road."

It will be premised that the owner of the Barefield plantation, lying contiguous to Vicksburg, had confided the sale of the property to Dr. Bowmar, a real-estate agent, and that Bowmar had caused the same to be surveyed into numerous lots. The plat of this survey was filed for record, and the lots were sold with reference to it. Marked on this map is the line of a projected road, and the conveyances of lots adjacent to this road are described with reference to it. This projected road commenced at a point where the Baldwin's Ferry Road crossed the Vicksburg & Meridian Railroad, running through the Barefield tract, and ending at point D on the plat of the survey.

The plaintiffs owned one of these lots, and by this action seek to recover damages from the defendants, who had purchased a part of the Barefield tract, for obstructions across the road, and a hinderance of their right, as claimed, to use it as a highway.

The defense rested, in the main, on the proposition that this road No. 8 was not a public highway, and that thereby the plaintiffs had no right of action. It was not a public highway, because, as argued by counsel, it was not established by public authority in the manner prescribed by the Code, sections 2334, 2335, 2336. The statute declares that no person shall change, turn, or alter a public road, unless by order of the Board of Supervisors. But such change may be made, or a public road may be laid out, on petition to the Board of Supervisors by ten or more freeholders, in the mode prescribed in section 2336.

There were public highways at the date of the revision; these were recognized, and a method is laid down by which existing roads may be changed and new ones opened.

But it is a grave mistake to suppose that a highway may not be established by the owner or owners of the freehold, which, when accepted by the public, is as complete as if the method appointed in the statute were pursued.

The proprietor of the fee may make such disposition of the land, either by the assignment of the entire estate, or by creating a less estate, or by subjecting it to such servitude or easement, for the benefit of one or more individuals or the general public, as he pleases. There is no limitation or restriction on this absolute dominion, except that he must not do that prohibited by law.

He may grant to certain persons or to the public the easement of a highway over his land; not that the grant is technically by deed, but he may do those acts which unequivocally manifest an intention that the community shall have and enjoy a highway on his private property. When the public accepts his offer there has been consummated that which is of

equal import with a contract or grant, and there has been accomplished what is expressed by the term "dedication."

The acceptance may be shown in two ways : first, by the formal act of the proper authority competent to speak and act for the public, or it may be implied from circumstances, such as user, etc. *The People* v. *Jones,* 7 Mich. 176 ; *Fulton* v. *Mehronfield,* 8 Ohio St. 440 ; *Briel* et al. v. *City of Natchez,* 48 Miss. 436.

Easements which depend for their support on prescription rest on the long enjoyment of the right, acquiesced in by the proprietors of the fee. A familiar mode, at the common law, of impressing upon land some servitude for the public was to prove a dedication by the acts and acquiescence of the owner of the estate, and acceptance and user by the people, or a formal act of acceptance by those who represent the public.

The statute was not designed to interfere with or prohibit the common-law methods of granting the easement of a highway, but the plain intendment was to define a method by which the state could compel the private owner to yield the easement to the public. The proceeding is a formal method of "taking private property for public use," and rests upon the prerogative of eminent domain in the state.

The Board of Supervisors, by its order of July 10, 1873, accepted the dedication or devotion by Brander, the owner of the Barefield plantation, of the land marked on Dabney's survey as reserved or appropriated for a road, and appointed an overseer of it. Moreover, the lots into which the plantation was divided were sold with reference to the convenience of this projected road, and these vendees have a special interest, and may be considered as having paid a consideration for it.

In principle, the case is analogous to that of *Briel* et al. v. *City of Natchez, supra,* and *Sandford* v. *City of Meridian,* 52 Miss. 380. In the former case there was a formal acceptance of the streets, which had been reserved by the proprietor in his sale of adjacent lots. There was no error in the admission of the order of the Board of Supervisors in evidence.

Objection was also made to the competency of the testimony of the witness Allein to prove the agency of the son for his mother by his mere declaration. The question arose in this wise: Allein, a witness for the plaintiffs, had stated that he had seen hands at work building the fence (that is, the fence across the way claimed as the road), and that John Kinnare, one of the defendants, and Thomas Kinnare, his son, worked on the fence, and then said: "Thomas Kinnare worked on the fence as a hand, and *represented himself as agent for his mother, Jane Kinnare.*"

The action was against both John and Jane Kinnare. The object of this testimony was to make Jane responsible, through the acts of her son and agent. The general rule is that an agency cannot be proved by the agent's own declaration; it must first be established *aliunde*. Whart. on Ag., sec. 162. When this declaration was allowed in evidence, there had been no evidence that Thomas was agent for his mother for any purpose. Allein had deposed that both John and Thomas did an act complained of as tortious. But Jane Kinnare had no connection with the act, unless through her son Thomas. And there was no evidence that Thomas was her agent in this matter, except his verbal declaration, and that is incompetent.

The altercation alluded to in the third assignment of error, in which Allein was prohibited by John and Thomas Kinnare to travel the road, is really nothing but part of the conduct attending the refusal to allow the witness to travel along the projected road. It serves to illustrate the conduct of the defendant John Kinnare; it was part of the tort at that time done by John, in maintenance of the obstruction across the road. In that sense it was competent evidence. It served to show that the obstruction was not placed on the ground for a temporary emergency, but in dispute and denial of the right in others to travel over the road. There is no error in this ruling.

The fourth and fifth assignments are not well taken. The object of the testimony objected to was to show that because of the acts of John Kinnare and his sons the road was not

worked, and that he deprived those interested in it of its use.

The court properly refused the second instruction asked by the defendants, because it was inapplicable, and would or might have misled the jury. It is doubtless true that the owner of the fee reserved and set apart the road, as marked on the map of the survey, primarily for the convenience of those who might become purchasers of the lots; but it was an offer by him of an easement to the public, also, which was accepted by the Board of Supervisors.

The fifth request of the defendant, refused by the court, contains a mixture of truth and error, in so far as it lays down a general rule. There may be a public road, arising out of a dedication by the owners of the fee, if it has been accepted by the public, and that acceptance may be expressed by user. To complete the right in the public, there must be user for such length of time as will preclude the owner of the fee from reclaiming. But the devotion on his part may be irrevocable, by acts done by him — as, by the sale of lots bounded by a reservation for streets, etc., as shown by cases cited in *Briel* et al. v. *City of Natchez, supra,* and *Sandford* v. *City of Meridian, supra.*

The acts done by the owner of the Barefield plantation, in causing it to be surveyed and divided into small lots, reserving a roadway, and his sales of these lots, with reference especially to the convenience of this reservation to them, and the order of the Board of Supervisors declaring it a public road, and assigning an overseer to work it, was in the nature of a grant of the easement, and an acceptance by public authority, and thereby constituted it a public road.

The refusal of the sixth request of instructions for the defendants was proper. That request affirms that a public road can only be established by the appointment of commissioners to view the ground, lay out the road, and a favorable report. We have already said that the statutory is not exclusive of the common-law modes of granting, on the one side, and accepting by the public of the easement on the other.

For the error indicated, the judgment must be reversed.

We have forborne to consider how far Mrs. Kinnare (a married woman) would be responsible for tortious acts done by her in the presence of her husband. No point on that subject was made in this court; nor does it seem to have been raised on the trial in the Circuit Court.

Reversed and remanded.