A. J. WHITWORTH ET AL. *v.* S. A. BERRY, AND S. A. BERRY *v.* McCOMB CITY.

1. STREET. *Dedication. Evidence. Map.*

    The mere making of a map of one's land, on which streets and squares are denoted, followed by no dealing with the land by the owner or the public in reference thereto, is not sufficient to show a dedication for the streets.

2. SAME. *Dedication. Evidence. Adverse possession. Case.*

    A corporation owning land in a town, caused a map to be made, showing squares and streets, but the streets were not opened. Afterwards it contracted to sell a certain tract described by metes and bounds, which embraced land marked on the map as a street, and the party contracting to purchase took possession of the whole and inclosed it. The deed, afterwards executed, described the land as bounded by the street, but the purchaser remained in possession, claiming adversely, more than ten years. No other deeds had been executed before that in recognition of the map, and no dealing by the parties or the public in recognition of the street was shown. *Held*, there was no dedication of the street, and the purchaser, by adverse possession, acquired title.

FROM the chancery court of Pike county.
HON. H. C. CONN, Chancellor.

The facts are sufficiently stated in the opinion.

*T. M. Miller,* for appellant.

The evidence shows:

1. The Mississippi Valley Land Company, in 1876, four years before Bergland purchased, dedicated the street to the. public, and offered and sold lands in squares adjoining, laid off on the plat in reference to these streets.

2. That company, the. then owner, admits the dedication, and insists upon its enforcement.

3. The town insists upon the dedication being preserved.

4. The dedication is expressly preserved in the deed to Bergland.

5. If the dedication is not preserved, the square so laid off will be cut off from the town, except by a path or circuitous route. In support of the dedication, see *Kinnare* v. *Gregory,* 55 Miss., 612; *Vicksburg* v. *Marshall,* 59 *Ib.,* 571; Elliott, Roads and Streets, 112.

*H. Cassedy,* for appellee.

It is admitted that, when Bergland purchased, all the land east of his was unimproved woodland, and the property now owned by Whitworth and other complainants remained unimproved until after their purchase in 1890. The strip has never been opened as a street, nor has it been recognized by the public as one. It is not so marked on any of the maps of McComb City. There has been no formal acceptance of the dedication, if any existed, either by the municipal authorities, or the public. *Sanford* v. *Meridian,* 52 Miss., 383; *People* v. *Reed,* 81 Cal., 70.

No lots were ever sold with reference to the map until after Berry's rights had accrued, and no previous dealing by the public with reference to the streets was shown.

Berry, and those through whom he claims, have been in actual adverse occupancy for more than ten years.

COOPER, J., delivered the opinion of the court.

These cases are submitted together, and having, by agreement, been tried in the court below upon the same evi-

dence, and presenting the same question, may be disposed of as one.

The first was commenced by Whitworth and others against Berry to perpetually enjoin him from fencing in a strip of land claimed by him as a part of his curtilage, but which the complainants claimed to be one of the streets of McComb City wrongfully inclosed by Berry. . The second is a suit by Berry against McComb City, seeking to enjoin the city from dealing with said strip of land as one of the streets of said city. On final hearing, the chancellor decided both suits in favor. of Berry, to reverse which decrees these appeals are taken.

Although there is some conflict in the testimony, the effect of it as a whole is to establish these facts: The territory comprising McComb City, or the most thereof, was owned by the Mississippi Valley Company, an incorporated company under the laws of this state. This company platted its lands, including that portion on which the residence of Berry is located, and on this plat the strip of land in controversy appears as a part of a street. The Illinois Central Railroad entered the corporate limits from the north-west, and intersected the land of the Mississippi Valley Company, cutting off a considerable body of it east of the road. The business and residence part of the town is almost entirely west of the railroad and south of the residence of Berry. The original plat of the town included only the land west of the railroad. The land of the Mississippi Valley Company east of the railroad, though platted in the year 1876, seems only within the last few years to have come in demand. There is no evidence that any lot east of the road was sold by the company before the sale to Bergland of the lot now owned by Berry, nor that any sale of any lot thereof was afterwards made until within the last three years. The land immediately south of Berry's residence has always been owned by the railroad company, and on it are located its shops, round-house, etc. Immediately north of Berry's house the Mississippi Valley Company

had donated several squares to the Southern Industrial Company, whose works were located thereon. About the year 1876, one Bergland, who was the manager of the Southern Industrial Company, owned and resided upon a square of ground south of its shops, and north of the lands of the railroad. On the south and east of his land a boot-shaped, undescribed parcel of land was situated, which, by reason of variation in different surveys, had not been described on the plat of its land by the Mississippi Valley Company as part of any square, though it abutted on the land of Bergland. He desired to purchase this irregularly-shaped tract, and, it seems, had some understanding with the valley company about it, for he fenced it in as a part of his lot. In 1880 he applied to the secretary of the company for a written contract, evidencing his right to buy it, and the secretary, relying upon his representation of its description, executed a contract to convey it upon payment of the purchase-price, in which contract the land was described by such metes and bounds as would carry that portion now claimed as a street; but finally, when the deed was executed, the land was described as being conveyed with reference to the plat of the land as appearing by the company's revised map, on which the street is distinctly marked. Although it is not distinctly stated in the evidence of any of the witnesses, it is, we think, sufficiently shown that this map was made after the town west of the railroad had been very generally built up, and that its purpose was, among others, to show the land east of the railroad, which the company contemplated opening up as an addition to the town. The facts in this respect are not fully developed, and, as we have stated, it does not appear that the Mississippi Valley Company sold any lots east of the railroad until the year 1890 or 1891, when it possibly sold to the defendants, Whitworth, Dunn, Jones and Watkins, the lots now owned by them. There is no distinct averment of this fact in the pleadings, and the evidence is equally indefinite. It does appear that the land east of the

lot sold to Bergland has remained woodland, though platted on the revised map; and it also clearly appears that Bergland, and those claiming under him, have for more than ten years been in the exclusive adverse possession of the land now sought to be dealt with as a street, claiming it as a part of the lot conveyed to him by the Mississippi Valley Company.

We have stated all the facts relied upon as evidence of dedication, except that in the answer of the defendants to the bill filed by Berry, it is averred that the Mississippi Valley Company filed a copy of the revised map in the office of the mayor. No evidence of this fact was introduced, for, though the witnesses say that there was such a copy in said office, it does not appear to have been supplied by the Valley Company, or that it had any knowledge that the copy was in the office of the municipality.

We are of opinion that the evidence is not sufficient to establish a dedication of the street by the owner of the land. The only thing done by it, so far as appears in evidence, was to make a map of the land and sell the lot to Bergland, who immediately closed up what is now claimed as a street, and has continued to occupy it as a part of his residence and curtilage ever since. The mere making of a map of one's own land, on which streets and squares are. shown, followed by no *dealing* with the property by the owner or the public in reference thereto, is certainly not a dedication of the streets appearing thereon. *Sanford* v. *Meridian*, 52 Miss., 383.

*Affirmed.*