W. T. RUTHERFORD *et al.*, Appellants, *v.* W. H. TAYLOR *et al.*, Respondents.

*Dedication—Estoppel in pais—Public Square—Injunction.*—The County of Randolph had, in the year 1831, received a conveyance of a tract of land for the purpose of laying out a county seat. Upon the land so conveyed the County Court laid out the town of Huntsville, and caused a plat of the town to be filed in the recorder's office, showing the streets and alleys, blocks and lots. Upon one block on the plat was marked "public lots," and the property thereon designated had been for many years used as a public square and the courthouse erected thereon. Subsequently the County Court ordered part of this property to be sold, which was done, and the purchasers commenced the erection of buildings. The owners of lots facing the square applied to enjoin the erection of such buildings. *Held*, 1. That the county, by making and filing the plat of the town and marking this property as "public lots," had dedicated the land to public uses, and that its acts as proprietor had the same effect as the acts of an individual—R. C. 1825, p. 762; 2. That the owners of lots facing the square who had purchased and improved their lots upon the faith of the dedication of the square to public uses, might bring their bill to enjoin the erection of buildings upon the square by individuals; and 3. That, apart from the dedication of the square to public uses by filing and recording the plat, the *user* of the lots by the county and the inhabitants of the town as public property constituted a dedication, and that by such acts parties were estopped from denying that the property was dedicated to public use.

### Appeal from Randolph Circuit Court.

*Prewitt*, for appellants.

I. The County Court had authority to dedicate said lots to public use—R. C. 1825, p. 246, §§ 7 & 8; id. p. 762, §§ 1 & 4.

II. The acts of the commissioner and County Court in making said plat, and declaring thereon and on the records of the court that said lots were held for public use, and the sale of the balance of said lots on the faith thereof was a dedication of said lots to public use, and the County Court could not afterwards apply them to any private purpose—City of Hannibal v. Draper, 15 Mo. 637; 10 Pet. (U. S.) 662; 4 Paige Ch. 510; Lackland v. N. Mo. R.R. Co., 31 Mo. 180 & 396; Carlin v. Paul, 11 Mo. 32; Ragan et al. v. McCoy, 29 Mo. 356.

III. Public squares.—Squares dedicated to public use in any manner, as for courthouses or other public buildings, stand on the same principle; and where the surrounding lots have been sold on the faith of such dedication, such squares cannot be applied to any private purpose—12 B. Mon. 538; 8 id. 232; 18 Ohio, 18; 3 Vt. 279, 519, 530; 9 Ham. (Oh.) 80; 2 Harr. (Pa.) 186; 2 Watts, 23; 3 Barr. (Pa.) 203; 1 Whart. 469; 2 Smith Lea. Cas., Am. ed., note to Dovaston v. Payne, 189.

IV. The county has no right even to move the county seat without a vote of the people and paying for the lots— R. C. 1825, pp. 252–5, § 7; R. C. 1855, p. 518, § 31.

*Hall & Reed*, for respondents.

There is no right in this case to the public by prescription, for there was no adverse possession. The designation on the plat of "public lots" was only used as a designation of lots for public buildings. "Public lots," as used in the plat, did not mean a conveyance to the public in the sense contended for, nor were they in any other sense public than as county or State property is called public property. The word public is used in two senses, one as the people generally, the other as those county and State organizations composed of the people. In the latter sense, the word public is here used; the use of them for courthouse and yard ever since the filing of the plat shows this. The County Court has the right to sell any real estate belonging to the county—R. C. 1855, p. 502, § 2. The proceedings were under the act of 1825, which authorized the establishment of a seat of justice and the reservation of lots for public buildings, and the plat should be construed with reference to the object for which the whole proceeding was authorized—Acts of 1825, ch. 3, § 8, p. 247.

WAGNER, Judge, delivered the opinion of the court.

This was a petition for an injunction to restrain the respondents from erecting a building upon a portion of the public square in the town of Huntsville.

Rutherford et al. v. Taylor et al.

From the record it appears that in the year 1831 the County of Randolph received a donation of fifty acres of land for the purpose of laying out a county seat. The deeds conveying the land were made by the donors to the county without reservation or condition. In accordance with the law then in force, the County Court of Randolph county appointed a commissioner and caused the town of Huntsville to be laid out, and a plat thereof to be made and filed in the recorder's office of the county, showing the streets and alleys, lots and size of the same, and across certain lots which have ever since been known and held as the public square the words "public lots" were written. And upon the records of the court the County Court made an order declaring that the said lots should be held for public use, and a certain other lot for a market-house, and another lot for a jail, and directing the balance of the lots to be sold. After the making and filing of the town plat, and the making of the said order, the balance of the lots around the square in the town were sold. A courthouse was afterwards built upon the two centre lots of the block marked "public lots," and the block or group of lots have ever since been held and known as public property, and called "courthouse square" and "public square," and none of the lots composing the square have ever been used for any private purpose. In September, 1865, the County Court made an order appointing a commissioner and authorizing him to sell forty-two feet off of each end of the public square, and in pursuance of the order the commissioner sold to the respondents the lot in question. The respondents, it seems, were cognizant of all the facts and purchased with full notice, and evidence was introduced showing that the property had always been held and known and used as public property.

The appellants alleged in their petition that they purchased their property and erected improvements thereon fronting the courthouse square on the faith and with the understanding that the square was public property, and that the house or building which the respondents were about to

put up would be a serious obstruction to the beneficial use and enjoyment of their property. This allegation was not denied in the answer. The court below being of the opinion that the property belonged absolutely to the county, and that the county had the right to dispose of the same in such manner as it might deem fit and proper, refused the injunction, and from the decree of the court the appellants took their appeal.

The town was laid off and the plat made and filed in the year 1831, whilst the statutory law of 1825 was in full force. By the eighth section of the statute of 1825, p. 247, it is declared that it shall be the duty of the tribunal transacting county business to designate and reserve from sale such lots and squares of ground as may be necessary for erecting public buildings thereon, and then provision is made for making orders for the sale of the residue of the lots so laid out.

The seventh section gives the County Court power and authority to receive conveyances of land for the purpose of laying off county seats; the county then becomes the proprietor of the town, the title to the lots is vested in it, and its acts in dedicating and appropriating lots or squares to public uses cannot be distinguished from like acts done by individuals. The subject of appropriations for public purposes has been much litigated in this country and frequently under the consideration of the courts; and it may be considered as now the established law of the land, that where lands are dedicated by the owner to any lawful use, whether public, pious or charitable, and are used for the object and in the manner contemplated by the owner, it enures as a grant. Even the existence of a grantee is not essential to the validity of such dedication; nor is any particular form of words necessary to give it effect. If accepted and used by the public in the manner intended, it works an estoppel *in pais*, precluding the donor and all claiming in his right from asserting any ownership inconsistent with this use. And this principle is applicable to the case of a dedication or appropriation of a lot of ground, to be used as an open square, or

a public walk, or a landing, or commons—Trustees of Watertown v. Cowen, 4 Paige, 510; Rector v. Hartt, 8 Mo. 448; City of Hannibal v. Draper, 15 Mo. 634; Brown v. Manning, 6 Ohio, 129; Town of Pawlet v. Clark, 9 Cranch, 292; Cincinnati v. White, 6 Pet. 432; Lane v. Shepherd, 2 Strange, 1004; Jarvis v. Dean, 3 Bing. 447; N. Orleans v. U. S., 10 Pet. 662.

In the case of Abbott v. Mills, 3 Vt. 521, the dedication was of a public square left in a village, around which the inhabitants had built their houses; and it was held a sufficient dedication that the proprietors of the town had exhibited such a square upon the plan of the town, and had suffered persons to go on and incur expense in erecting their houses, although they had not marked off the same by monuments upon the ground, and they were accordingly prohibited from making use of the land for purposes inconsistent with its use as a public square.   And in Doe v. Town of Attica, 7 Ind. 641, it was decided that a dedication might be proved by parol; and, therefore, where the proprietors of a town exhibited a plat thereof with certain lots upon it denoted as a "public square" and colored, stating that the lots were for a public square, it was sufficient evidence of a dedication, although on the recorded plat the lots were not marked or denoted as a public square.   (See Washb. on Easm. 154; State v. Catlin, 3 Vt. 530; Pomroy v. Mills, 3 Vt. 279; Cady v. Conger, 19 N. Y. (5 Smith) 256; Commonw. v. Rush, 14 Pa. 186.) A dedication may be made without writing, by act *in pais* as well as by deed.   It is not at all necessary that the owner should part with the title which he has, for dedication has respect to the possession, and not the permanent estate.   Its effect is not to deprive a party of his land, but to estop him while the dedication continues in force from asserting that right of exclusive possession and enjoyment which the owner of property ordinarily has—Washb. on Easm. 155; Hunter v. Sandy Hill, 6 Hill, 411.   That there was a dedication by the County Court of Randolph county of the lots for a public square seems too clear to be for a moment questioned.

They were marked "public lots" and were reserved from sale, and for more than thirty years they have been known as "public square" and "courthouse square"; and relying on the facts that they were so reserved, held and appropriated for public uses, the inhabitants of the town have bought the adjoining property facing on the square and erected valuable improvements on the same. Here is a dedication by the county as proprietor and an acceptance by the public. The designation of "public lots" on the plat, when taken in connection with the law under which the proceedings were had, was sufficient to show the uses for which the property was set apart and appropriated; but were there any doubts as to this matter, the acts of the county in selling the lots all around on the face of the square, with the general understanding by both the county and the inhabitants of the town that the lots were reserved and to be used as a courthouse, or public square, would constitute an estoppel *in pais*.

The court erred in refusing to grant the injunction prayed for, and as the parties agree on the facts and desire this controversy settled, the judgment will be reversed, and a perpetual injunction entered in this court.

Judge Holmes concurs; Judge Lovelace absent.