JOHN ROWZEE ET AL. *v.* E. C. PIERCE ET AL.

1. MUNICIPALITIES. *Dedication. Subverting object of donation. Injunction.*

   The municipal authorities of a town to whom land has been donated for public use as an ornamental park exclusively, may be restrained by injunction from subverting the object of the donation by building a public schoolhouse thereon.

2. SAME. *Amendment. Parties.*

   In a proceeding by citizens and lot owners to restrain the erection of a schoolhouse on land dedicated for a public park, it is error to refuse to allow an amendment to the bill making the donors of a part of the money employed in the purchase of the land parties thereto, although they reside without the limits of the town and own no property therein.

3. SAME. *Abandonment. Reversion.*

   Upon abandonment by a town of the public purpose of a donation of land, the property reverts to the original donors.

FROM the chancery court of Pontotoc county.
HON. BAXTER MCFARLAND, Chancellor.

The opinion states the nature of the bill, the terms of the deed under which the land was held, and inferentially all the grounds of the demurrer.

*J. D. Fontaine*, for appellants.

The court below ought to have allowed the amendment, as asked. The owner of the land, whether dedicated for the use of a highway or street, or square or common, retains his exclusive right in the soil for every purpose of use and profit not inconsistent with the public easement, and may maintain appropriate action for any encroachments upon it. 2 Dillon on Muni. Cor. (3d ed.), p. 632 (sec. 633, note 1, p. 632, and authorities cited).

The lots in this case were conveyed to the president and selectmen of the town of Pontotoc, and their successors in office, forever, only for public use as an ornamental park, subject to such regulations as they may make for the purpose of fencing and ornamenting the same, and keeping the same in good order, and preventing nuisances or anything tending to subvert the object of the donors. This, together with all the other allegations of the bill, are admitted by the demurrer and motion to dissolve the injunction, which are for the same causes. The conveyance is identically the same with that in *Daniel* v. *Jackoway*, and is a continuing subsisting trust for a specific purpose, and ought to be carried out on the terms prescribed. The purpose must be pursued, and there must be no diversion. *Daniel* v. *Jackoway*, Freem. Chan. Rep., 59. See, also, *Kilpatrick* v. *Greaves*, 51 Miss., 432. But if it should be as set forth in the opinion of the chancellor, that the conveyance was a conveyance direct to the municipality, it does not change the status—a municipality is but the trustee for the inhabitants for the use designated. *Le Clercq* v. *Trustees Gallipolis*, 28 Am. Dec., 651. A city cannot run streets through parks (*Price* v. *Thompson*, 48 Mo., 361), or erect buildings therein (*Rutherford* v. *Taylor*, 38 Mo., 315), or divert a square for uses foreign to

the dedication ( *Warren* v. *Mayor of Lyons City*, 32 Iowa, 351). And the erection of a private building upon land reserved (dedicated) for a public square, and which has been illegally sold by the public authorities, is a nuisance of such irreparable nature as to give a court of equity jurisdiction to grant a perpetual injunction. 2 Story's Eq. Jur. (10th ed.), sec. 927; *The Commonwealth* v. *Bush*, 14 Penn. St., 186, which case is cited and approved in *Briel* v. *City of Natchez*, 48 Miss., 423. And where property is once dedicated for public use, a municipal corporation, or other trustee for the public, cannot extinguish such public use nor alien the land. 2 Dillon on Munic. Corps. (3d ed.), 674, sec. 50, note 1, and authorities cited; 5 Am. & Eng. Enc. L., 418, sec. 6, note 2, and authorities cited, where lots were dedicated to school purposes, and on which to erect schoolhouses, is inalienable by incorporate place where it lies, so as to extinguish the use without the consent of the dedicator, although rendered unsuitable for schoolhouses. *Board* v. *Edson*, 18 Ohio St., 221. The dedication of the lots in this case is for a specific purpose—" only for the public use as an ornamental park." The building of a schoolhouse thereon is a diversion, and is putting the lots to a use other than that authorized by the terms of the dedication. Where property dedicated is put to a use other than that authorized by the terms of the dedication, then the dedicator, or any lot holder of the city, may proceed in equity to enforce the proper use and inhibit an improper one. *LeClercq* v. *Trustees of Gallipolis*, 28 Am. Dec., 641; *Cater* v. *City of Portland*, 4 Ore., 339; 5 Am. & Eng. Enc. L., 418, note 1, and authorities cited; 2 Dillon on Munic. Corps. (3d ed.), sec. 653, and authorities in note 1; note to *State* v. *Trask*, 27 Am. Dec., 569. And, again, an individual may join with the municipality to prevent the erection of buildings on land dedicated to a public use. *Trustees of Watertown* v. *Cowan*, 27 Am. Dec., 81; *Maywood Co.* v. *Village of Maywood*, 6 N. E. Rep. (Ill.), 866.

The suit was therefore properly brought in the name of com-

plainants, resident citizens and lot owners within the corporate limits of the town of Pontotoc, beneficiaries under the dedication, to enforce the trust, and prevent the trustees thereof from violating the trust which they had accepted. It was not necessary, as is contended, that the proceeding should be by indictment at law or by information in equity, at the suit of the attorney-general or the state. *Whitfield* v. *Rogers*, 26 Miss., 84. And while it is true that land dedicated may be devoted to such uses as are consistent with, or necessary to, the principal use (5 Am. & Eng. Enc. L., 417, sec. 7, note 4, and authorities cited), the erection of a schoolhouse upon land dedicated for "an ornamental park," is not a use consistent with, or necessary to, the principal use.

The nonuser of property dedicated, even for years, by the public, is no abandonment. To deprive the public of it, there must be such open, notorious and continued individual use of the property as to give notice of adverse occupation and use. *Briel* v. *City of Natchez*, 48 Miss., 423. But there can be no adverse possession. These lots were dedicated for a specific purpose, in trust for the public. *Vicksburg* v. *Marshall*, 59 Miss., 570, 571; *Price* v. *Plainfield*, 40 N. J. L., 608. The doctrine of *cy pres* has been utterly rejected by a great majority of the states; a few have accepted it in a modified and partial form. 2 Pomeroy's Eq. (2d ed.), sec. 1027; 3 Am. & Eng. Enc. L., 133, sec. 10. The doctrine cannot be applied here; it is a rule of construction applicable to a will (not a deed), to ascertain intention. Bouvier's Law Dic., 418; Wharton's Law Dic., 238. But if the doctrine is applicable to deeds, it cannot be invoked in this case, because the intention to dedicate the lots for the specific purpose of an "ornamental park" is perfectly clear, and any rule that would fail to carry out such intention, would defeat the law. 2 Perry on Trusts (3d ed.), sec. 727. And where the gift is for a particular purpose only, the court cannot, by instruction, *cy pres* the original purpose. 2 Perry on Trusts (3d ed.), sec. 726. The lots were

accepted in accordance with the terms of the deed dedicating them, and for the specific purpose only, and an abandonment of the dedication cannot be set up; the lots claimed and appropriated to another and different purpose, would be in palpable and direct violation of the contract. The appellees are estopped.

*Blair & Anderson,* for the appellees.

Among the authorities cited by Dillon in his work on municipal corporations there cannot be found a case in which any court has held that one or more inhabitants or taxpayers can maintain a bill to enjoin a breach of trust, on the part of corporate authorities, without alleging and proving that such breach will cause some special or direct injury to the parties complaining, over and above that suffered by the general public.

In the case of *City of Chicago* v. *Union Building Asso.,* 102 Ill., 379, the court will find this doctrine ably and fully discussed. The distinction is there clearly made between a suit of this character by a taxpayer who suffers a direct injury and one who is injured only with the general public. In that case, the court says: "In no case has it ever been held that a private individual may maintain a bill to enjoin a breach of public trust without showing that he will be specially injured thereby," and cites Bispham's Principles of Equity (2d ed.), 512, and many other authorities. We ask the court's attention to that case. See, also, *Fritz* v. *Hobson,* 19 Am. Law Reg. (new series), 624–637; *Reynolds* v. *Commissioners of Stark County,* 5 Ohio, 204; *Smith* v. *Houston,* 6 Ohio, 101 (25 Am. Dec., 741); *Parody* v. *School District,* 15 Neb., 514.

Why should not the same principles apply in cases of this character that apply in public nuisances? Our court has decided, in *Green* v. *Lake,* 54 Miss., 540, that to enjoin a public nuisance the public authorities must move. A private action, either at law or in equity, will not lie, unless the plaintiff has sustained special damages.

It is contended by the opposing counsel that the contributors of the purchase money, who, by amendment, were sought to be made parties complainant, have such an interest in this matter that they can maintain the suit. In the first place, the making of new parties is a matter in the discretion of the court, which, when exercised, will not be set aside on appeal, ordinarily. In the next place, what interest, we ask, have the contributors of the purchase money of these lots in this suit over and above what the general public has? If the deed contained a condition subsequent (and we do not think it does), the only interest the contributors of the purchase money would have in it would be to make an entry and claim it on breach of condition. See case of *Railroad Co.* v. *Neighbors*, 51 Miss., 412. That is a case where certain lands were deeded to the railroad company, "to have and to hold, with all appurtenances, for the only proper use of said railroad company for construction of warehouses, machine shops," etc., and the railroad company, among other things, built a hotel on said property. The heirs of the grantor filed a bill to enforce a forfeiture, alleging a breach of condition subsequent. The court held the deed contained no condition subsequent, and also that where a deed is made with conditions subsequent, all that remains in the grantor is the possibility of reverter or right of entry upon condition broken. In 2 Dillon on Munic. Cor., in sec. 663, this language is used: "Property dedicated to public use or to a particular use, does not revert to the original owner except where the use becomes impossible," etc. So, if this was a dedication with a condition subsequent, as contended by opposing counsel, complainants, as donors, had no other interest in it except the possibility of reverter, in the event it became impossible to execute the use. If we are right about this in all other respects, the donors stand in the same situation as the general public. They had parted with the title, or, rather, their trustee had, for they never had it. But if appellants' counsel is correct in his contention that the donors have such an interest in

these lots that they can maintain this suit even if the other inhabitants of the town could not in their individual capacity, still the court was right in refusing to make them parties.

This is a suit on behalf of complainants and all others similarly situated. It is what is known as a class suit, and such suits cannot be maintained except where all who are in the class sustain the same relation and interest to the subject-matter of the suit. *Coulson* v. *Harris*, 43 Miss., 728. In this case our supreme court decided that a suit by one or more taxpayers, in behalf of themselves and all other taxpayers could not be maintained because this constituted a class of complainants who were not similarly situated. They were not similarly situated because one taxpayer might be liable for a very small tax, while another might be liable for a much larger amount. We think it unnecessary to cite authorities further on this point. A suit by a donor to enforce a trust declared by him is a very different thing from a suit by an inhabitant of the town where all the inhabitants of the town constitute the beneficiaries of the trust. But in this case the parties sought to be made complainants by motion to amend, are not the donors of these lots. As shown by the bill and the deed exhibited with it, they are only the contributors of the purchase money. The legal title to the lots was in the trustee of the donors. It seems clear that if the donors of these lots have the right to maintain this suit, the proper parties complainant here should be the heirs of S. J. High, the trustee.

We contend, further, that if the inhabitants of the town of Pontotoc, or S. J. High or his heirs, or the contributors of the purchase money of these lots, ever had any right to complain on account of said lots being diverted from the use to which they were dedicated, they are now barred at this late day from making such a claim. Although dedicated anterior to the civil war, the lots have never been used for a public ornamental park, and no steps taken in that direction. On the contrary, they have been used as a fair ground, stock hitching ground, resort

for circuses and shows, base ball players, etc., and a public road runs through it. We contend that these things come much nearer constituting a diversion than building a schoolhouse in the extreme corner of this land; and that, after submitting to such a diversion for the length of time shown, complainants and all others are now estopped from making complaint. It is well settled law that the right of dedicators to enforce a specific execution of the trust declared in property dedicated to public use, may be barred by lapse of time. See *Williams* v. *Presbyterian Society*, 1 Ohio, 478. The same doctrine is recognized in *Coulson* v. *Harris*, 43 Miss., 728. It seems to us a sound and wholesome doctrine. If the dedicators of property to public use, and the public, submitted to the diversion of said property from its purpose for over forty-three years without complaint, it seems that such silence ought to be taken for consent, and operate as an estoppel and bar. Again, if the title to these lots was conveyed directly to the municipality, and contained no condition subsequent, by way of trust, as would seem to be the case from *Coulson* v. *Harris*, *supra*, then neither the donors nor any other person would have the right to maintain this suit, and the municipality could use the property for any legitimate municipal purpose. The case of *Le Clercq* v. *Gallipolis*, 7 Ohio, 217, recognizes this doctrine. Some of the other cases cited by opposing counsel likewise recognize it, and many of those cases, on critical examination, will be found quite inapplicable to the question before the court.

Argued orally by *W. D. Anderson*, for appellee.

Whitfield, J., delivered the opinion of the court.

The original bill in this case charged that on the twenty-fifth day of May, 1854, a deed was executed by the grantors therein to the president and selectmen of the town of Pontotoc, and their successors in office, to lots Nos. 20 and 21 in the southwest quarter of section 33, township 9, range 3 east, "only for

public use as an ornamental park, subject to such regulations as they may make for the purpose of fencing and ornamenting the same, and keeping the same in good order, and preventing nuisances or anything tending to subvert the before-declared object of the donors of money to purchase the same;'' that said dedication was duly consummated by acceptance on the part of the public authorities; that the board of mayor and aldermen of the town of Pontotoc are the successors in office of the said president and selectmen of the said town of Pontotoc; that the said board of mayor and aldermen of the town of Pontotoc declared the said town to be a separate school district; that the school building—the Pontotoc Male Academy—in which said separate school district school was taught, had been, on or about the twenty-eighth day of January, 1897, destroyed by fire; that the said board had contracted with one E. C. Pierce to erect another schoolhouse, and that said Pierce, instead of building said schoolhouse upon the site of the burned school building, or on land belonging to said Pontotoc Male Academy, had begun the construction of said building upon said lot No. 20, and he was doing this under the direction and with the consent and approbation of said board of mayor and aldermen; that complainants were lot holders within the corporate limits of the town of Pontotoc, without saying, however, whether their lots adjoined the public square or not; that the erection of said schoolhouse building upon said lots was putting them to a use other than that authorized by the terms of said deed of dedication, and was not consistent with or necessary to the principal use for which said dedication was made—that of an ornamental park only; that the erection of the said schoolhouse building upon said lots was a direct and palpable violation of the use for which said lots of land were dedicated; and prayed an injunction against said Pierce and the said board of mayor and aldermen of the town of Pontotoc to restrain them from erecting said building upon said lots, and using said lots for school-

house purposes, and to enforce the proper use of said lots according to the terms of the deed dedicating them.

This bill was filed on behalf of complainants and other resident citizens of said town. Subsequently, the complainants asked leave to amend their bill, by making J. F. Wray and W. J. Rogers, two of the original donors of the purchase money of the land, parties complainant. The original bill further alleged that the dedication was made subject to "such regulations as the city authorities might make for the purpose of fencing and ornamenting the same, and keeping the same in good order, and preventing nuisances, or anything tending to subvert the before-declared object of the donors of money to purchase the same." The language of the deed is as follows: "To have and to hold the aforesaid lots to the said party of the second part, and their successors in office, forever, but only for public use as an ornamental park, subject to such regulations as they may make for the purpose of fencing and ornamenting the same, and keeping the same in good order, and preventing nuisances, or anything tending to subvert the before-declared object of the donors of money to purchase the same."

The defendants demurred to the bill upon the grounds (1) that the complainants failed to show that they would be injured in any way whatever, either as taxpayers, property owners or citizens of said town, or otherwise, by the building of said schoolhouse, and that they did not show that the construction of said building would be a public injury; (2) that the bill showed that the building of said schoolhouse would not cause any injury, special or peculiar, to complainants, or any injury other than such as would be common to all the citizens of said town; (3) that the complainants had no right to institute the suit, but that it should be brought by the proper public official on behalf of all the citizens of said town; (4) that the bill showed that said lots had been abandoned for the purposes for which they were dedicated, and that the said town, therefore, had acquired the right to use them for any other legitimate purpose.

Affidavits were taken by both parties. The chancellor dis-allowed the amendment, sustained the demurrer, dissolved the injunction, and dismissed the bill.

It may be conceded that the preponderance of the testimony showed that the public school building was being erected on one corner of the square, upon a part of the ground consider-ably cut up by gullies, and which the city authorities, or Pierce, had had filled up to make a foundation for the building.

The bill in this case is not filed to abate a nuisance, either public or private. The cases of *Green* v. *Lake*, 54 Miss., and *Whitfield* v. *Rodgers*, 26 Miss., 84, are both inapplicable here. And the case of *Chicago* v. *Union Building Asso.*, 102 Ill., 379, is also inapplicable, not being a bill filed on the line of the bill in the case at bar. Neither is this bill filed to enjoin the collection of taxes or of local charges. Cases of that character are also malapropos.

The amendment should have been allowed. And treating the bill as so amended, it would be one by the original com-plainants, and two of the original donors of the purchase money of the land dedicated to public use as an ornamental park alone, against the city authorities and the contractor, to re-strain them from devoting the land dedicated to any other use than that named in the dedicating deed, and to secure to the town the very use to which the owners of the property making the dedication declared it should be devoted. It is well settled that such a bill may be filed by such donors, as well as by the city authorities, and against the city authorities, restraining them from devoting the property to an inhibited use, when they themselves violate the trust by seeking to devote the land to any other than the declared use. And many authorities hold it may be maintained by any lot owner in the city. *Church* v. *City of Portland*, 6 L. R. A., 259, and the exhaustive note thereto; *Daniel* v. *Board*, 1 Freeman Ch. Rep., 59.

In the note at page 260, in 6 L. R. A., it is said: " If the ded-icated property be put to a use foreign to that contemplated by

the dedication, any property owner may inhibit such use," citing many cases. And at page 262 the same doctrine is declared in the conclusion of the note, citing many other authorities. *Warren* v. *The Mayor*, 22 Iowa, 351; *Board of Education* v. *Edson*, 18 Ohio St., 221; 2 Dillon on Mun. Corp. (4th ed.), section 653, and the authorities in note 1, and section 915. In this last section Mr. Dillon observes: "If the property of such a corporation be illegally or wrongfully interfered with, or its powers be misused, ordinarily, the action to prevent and redress the wrong should be brought by and in the name of the corporation; but if the officers of the corporation are parties to the wrong, or if they will not discharge their duty, why may not any inhabitant . . . be allowed to maintain in behalf of all similarly situated, a class suit, to prevent or avoid the illegal or wrongful act? Such a right is especially necessary in the case of municipal and public corporations, and if it be denied to exist, they are liable to be plundered, and the taxpayers and property holders, on whom the loss will eventually fall, are without effectual remedy." *Carter* v. *Portland*, 4 Or., 339; *Price* v. *Thompson*, 48 Mo., 361; *Commonwealth* v. *Rush*, 14 Pa. St., 186. In Carter's case it is said that "any lot holder of the city may proceed in equity to enforce the use according to the original dedication," citing numerous authorities. *Briel* v. *City of Natchez*, 48 Miss., 439; *Rutherford* v. *Taylor*, 38 Mo., 315; *LeClercq* v. *Trustees of Gallipolis*, 28 Am. Dec., 641; note to *Trask* v. *State*, 27 Am. Dec., 569, under the title "Changing the Use," where Mr. Freeman says: "Where property dedicated is put to a use other than that authorized by the terms of the dedication, then the dedicator, or any lot holder of the city, may proceed in equity to enforce the proper use." 5 Am. & Eng. Enc. L., 418, note 1, and the authorities.

It is said that the title is absolute in the city authorities. This is a mistake. It is not absolute in the sense that the city had the whole title, legal and equitable, and the right to dispose of the property as an owner in fee simple might; and cases like

*Clark* v. *Providence*, 1 L. R. A., p. 725, where cities had such complete title, and their disposition of property thereunder has been upheld, are not applicable here.   This property, according to the terms of the dedicating deed, is held in trust " for use only as a public ornamental park."   It is especially provided that it might be fenced, and the sole authority which the city had was to regulate the use marked out, not to change or alter it so as to put the land to a use wholly inconsistent with the one named by the dedicator.   It may be true, as said in 5 Am. & Eng. Enc. L., note 4, p. 417, that the land " might be put to any use consistent with the object of the dedication, and which would better adapt the premises to the particular use," but it is clearly settled by authority that the erection of a schoolhouse building in a public square is not consistent with the use of the lot as an ornamental public square.

It is held in *Rutherford* v. *Taylor*, *supra*, that buildings could not be erected in public square, and in Edson's case, *supra*, it is said: " The dedication in this case, as stated in the petition, was for school purposes; and on which to erect schoolhouses. Without determining whether, under this dedication, the lots could properly be used for school purposes, other than the erection of schoolhouses thereon, it is enough to say that the dedication is of the land, and not of its value or proceeds." And in the case of *Church* v. *The City of Portland*, *supra*, it is held that ground dedicated for a public park could not be used for the purpose of erecting thereon a city hall, the court saying: " Using land to erect a public building thereon is not using it for ornamental purposes, however grand or magnificent the structure may be.   It dedicates the land to a useful purpose, but it certainly is not using it for an ornamental one.   The city of Portland is no mendicant, nor was it expected to be.   It has always been able to buy necessary and suitable grounds upon which to erect its public buildings, and it should do so, and not attempt to encroach upon its public squares, which were clearly intended to be left open and unoccupied, for the health, comfort

and recreation of its inhabitants. The argument of respondent's counsel, that the dedicators intended that the blocks might be ornamented with public buildings, if the city authorities should so determine, if maintained, would be liable to lead to absurd consequences. One set of city officials might hold to one policy and another set to a contrary one, and each act lawfully. The city authorities of to-day might determine that the blocks should be ornamented with public buildings, and proceed to erect them at a great expense, which would be entirely consistent with the intention of the dedicators. The city authorities of next year may conclude that the blocks should be ornamented only with walks, rustic seats, trees, grass, flowers, fountains, statues and mementoes of heroic deeds, and, in order to carry out the latter mode of ornamentation, proceed to tear down the edifices erected by their predecessors, which would be equally consistent with the intention of the dedicators. I do not think that the court would be justified in adopting any such view. The rule in regard to property dedicated for public use, as laid down in 5 Am. & Eng. Enc. L., 417, 418, is as follows: 'Property dedicated to the public use may be said to be restricted to the use for which it is fairly intended to be dedicated, although this rule is construed to include such uses as are consistent with or necessary to the principal use. If dedicated property be put to a use foreign to that contemplated by the intention and purpose of dedication, then not only the dedicator, but any property holder, will have his remedy in equity to enforce the proper use, and inhibit an improper one.' That the blocks were intended to remain open plazas, and to be beautified and adorned by the hand of art, I do not think there can be any doubt. Spots of that character, especially in large cities, are highly important. They afford healthful and pleasant resorts in the heated season, and are, in fact, the only places where a large class of the community are able to go and enjoy the blessings and comfort of shade and pure air, and any attempt, on the part of public officials, to appropriate them for

sites for public buildings, in which to conduct the economic affairs of the city, under any pretext whatever, would, as I view it, be a cruel effort to subvert a humane scheme.''

So, in *Trustees, etc.,* v. *The Mayor,* 33 N. J. L., 13 (97 Am. Dec., at page 698), it is said: ''The word 'square' on this plat of ground indicated a public use, either for purposes of a free passage or to be ornamented for grounds of pleasure, amusement, recreation or health. That is the proper and settled meaning of the term in its ordinary and usual signification.''

In *Rush* v. *Commonwealth, supra,* the same meaning is given the word ''square.'' So, that it is clear that the terms of this grant dedicated the ground to use as a public ornamental park alone, and that the word '' park,'' *ex vi termini,* means a place to be kept open and ornamented for public uses, such as above indicated. It is also clear that the right to regulate the park, under this specific use, furnishes no right to change that use. But it is said again that this ground cannot be dedicated to the use of a park better than by erecting this building; that the construction of such a building is, on the doctrine of *cy pres,* appropriating it to the next best use in the nature of an ornamental public park; but the authorities above cited show that no such construction can be indulged on the facts in this case. *Board of Education* v. *Edson,* 18 O. St., 226; *Church* v. *City of Portland, supra;* Perry on Trusts, vol. 2, sec. 727; 2 Pom. Eq. Jur., sec. 1027.

In Perry on Trusts, *supra,* it is said: '' From this review of the law, it appears that the object of all the rules upon this subject is to ascertain and carry out as fairly as may be the true intention of the donor. As thus explained, the doctrine of *cy pres* is only a liberal rule of construction to ascertain the intention. The intention of the donor is the point principally aimed at by all the courts.''

Apply these principles here, and the inquiry would be, what was the intention of the donors at the time the dedication was made, in 1854? At that time it may well be supposed that this

town was prosperous. War had not ruined the town and destroyed its revenues, and the intention of the dedicators at the time the grant was made, was, doubtless, to keep open this place as a public ornamental park, for the uses indicated in the authorities cited, and it is not for the court, on account of changed conditions, due to civil convulsions, to substitute what the dedicators might now wish to be done, for the intention as it existed when the grant was made. It is said, also, that this property had been abandoned, and hence the city authorities might do as they pleased with it. This is not the law. If it had been abandoned, then the fee in the property reverted to the original donors, and not to the city.

In *Carter* v. *The City of Portland, supra,* it is said that "the original owner, though he has the naked fee, has no right whatever to interfere in the premises, except where the use becomes absolutely impossible, or where the corporate authorities seek to put the premises to some other use than that to which they were originally dedicated." In *Briel* v. *City of Natchez, supra,* at page 438, it is said: "If the city had lost the easement by abandonment or nonuser, Green or his heirs would take the property on the original title, discharged of the incumbrance of the servitude." In *Board of Education* v. *Edson, supra,* it is said, at page 226: "Should the sole use to which the property was dedicated become impossible of execution, the property would revert to the dedicators or their representatives," citing authorities.

It must thus be clear that none of the objections interposed by the demurrer are available as against a bill of this particular nature. It certainly cannot be impossible for the town of Pontotoc to raise funds with which to make this property a public ornamental park, as was originally intended. The town may not be able, and it might not be desirable, to incur any great expense towards this end; but surely the expense would be small which would be required to properly keep it in order, and use it as an open public ornamental park, devoted to the amusement,

recreation, and health of the citizens.    Neither can it be necessary that a public school building should be erected in the park. No reason is shown why it might not as well have been erected on the site of the original building.    But however all this may be, it remains true, on principle and on authority, that, the original donors dedicating this ground for a public ornamental park alone, are entitled in equity to prohibit the city authorities, or anyone in conjunction with them, from devoting it to any other use than such as is clearly consistent with the purposes of the original grant.

*Decree reversed, demurrer overruled, injunction reinstated, and cause remanded, with directions to allow the amendment, and proceed in accordance with this opinion.*