PICKETT & MUDGETT, Respondent, v. THE TOWN OF MERCER, Appellant.

Kansas City Court of Appeals, April 4, 1904.

1. **DEEDS: Consideration: Limiting Estate.** A deed made by certain lotowners to a municipality was in the ordinary form specifying no particular purpose for which the lots were conveyed, and recited a money consideration which was conceded to be true. *Held*, it was competent to show additional consideration provided it was a valuable one, but not an agreement that the lots should be used for a street, which would contradict the granting clause and constitute a limitation of the estate and should have been inserted in the conveyance, if so intended.

2. **DEDICATION: Time: Official Act: Intention.** The records of the municipality show that the money consideration was raised to invest in land for a public park and not a public street. *Held*, the village had no authority to divert the property to any other purpose than that intended and the purpose could be ascertained only from the official action of the board and not from the verbal expressions of its members; and dedication must be indicated by some act evincing such intention and mere user, unless continued for a sufficient time proves nothing.

Appeal from Mercer Circuit Court.—*Hon. P. C. Stepp,* Judge.

REVERSED.

*Reed & Alley* and *Orton & Orton* for appellant.

(1) By section 6010, Revised Statutes of Missouri, it is provided that the town may open and form public squares. By section 6350 it is provided that towns may contract debts for any of the purposes authorized by the charter. It was under these two sections that the town acted, the purpose being to form a public square. (2) By the provisions of section 6010 the town is

authorized to lay out and open streets and alleys, but the mode of procedure is entirely different from that required in opening public squares. In case of a street, the board is to appoint commissioners to assess the damage, and in case of a street the public have only an easement, while the fee remains in the abutting owner, but in the case of a public square the town holds the fee. Sherlock v. Railway, 142 Mo. 172; Union Co. v. Railway, 135 Mo. 366; Snody v. Boler, 122 Mo. 479; Williams v. Road Co., 21 Mo. 580. (3) The plaintiffs claim the town has only an easement or right-of-way in the land conveyed. That such is not the intention is clearly shown by the terms of the deed, which conveyed to the town the fee, and by the conditions of the proposition voted on, authorizing the purchase, these show that the town acquired rights different from what it had in the public streets. (4) The town could act only through its board of trustees and its acts can only be shown by the records of its proceedings. The town can not be bound by the talk of members of the board or citizens of the town on the street corners. 15 Am. and Eng. Ency. Law 1028. (5) There was no evidence of a dedication of the land to street purposes. If the town dedicated it to street purposes it must have been by the town board. No such dedication was shown. On the contrary the evidence shows that the land was bought in November, and the town began to make arrangements to improve it early the next summer. That a public square is something different from a public street by the definition of the term. 17 Am. and Eng. Ency. Law 416.

*Ira B. Hyde, A. M. Hyde* and *E. M. Harber* for respondents.

(1) The appellant in the circuit court relied solely upon the alleged inability of the town to make any contract or to be bound by anything not contracted for in the manner provided by section 6759, Revised Statutes

1899. We think said section was intended to apply to contracts for labor, material, etc., as there are other and very different provisions of the statute relating to the acquisition of land for parks, buildings, roads, etc. The town is estopped from revoking its dedication and for using the ground for a wholly different purpose than that for which it secured and accepted it. (2) The public purposes detailed in the evidence to which the land was to be dedicated was a part, and in fact the principal part of the consideration, of the sale and conveyance. If those public uses had been stated in the deed as a part of the consideration, then, we think, there could be no question, but the town, in accepting the deed, would be bound by its provisions. But the law is well-settled that parol evidence is admissible to show that the true consideration was different from that stated in the deed; and that a recital in a contract of a money consideration does not exclude evidence of an additional consideration. Landman v. Ingram, 49 Mo. 212; Miller v. McCoy, 50 Mo. 214; Fontaine v. Ins. Co., 57 Mo. 552; Attringer v. Capeheart, 68 Mo. 441. (3) The dedication of this land to the aforesaid public uses was complete. 5 Am. and Eng. Ency. of Law (1 Ed.), 398; Campbell v. Kansas City, 102 Mo. 326. (4) Dedication by acts *in pais* may be made by municipal corporations as well as by individuals and estoppel will apply to them the same as to individuals. Rutherford v. Taylor, 38 Mo. 315; Depot Co. v. St. Louis, 76 Mo. 393; Railroad v. Marion Co., 36 Mo. 294; State ex rel. v. Dent, 18 Mo. 313. (5) Property dedicated to public use may be restricted to a particular use. Equity will restrain a sale or the devoting it to a different use at the suit of abutting landowners. Even the Legislature has no power to extend or enlarge the uses. Cummings v. St. Louis, 90 Mo. 259; Church v. Portland, 6 L. R. A. 259; also notes to numerous cases, ibid, 259; Prince v. Thompson, 48 Mo. 361. (6) Verbal restrictions as to intended use of public ground are upheld and enforced

at the suit of parties who have bought or improved abutting property relying upon the same. Chicago v. Ward, 38 L. R. A. 849; Rowzee v. Pierce, 40 L. R. A. 402. (7) The public is an ever-existing grantee capable of taking dedications for public uses and its interests are a sufficient consideration to support them. Warren v. Jacksonville, 15 Ill. 236. (8) Acceptance by the public will be presumed if the gift is beneficial and user is evidence that it is beneficial. Abbott v. Cottage City, 3 N. E. 773; Oliver v. Worcester, 102 Mass. 489; Clark v. Waltham, 128 Mass. 567; Veale v. Boston, 135 Mass. 187.

BROADDUS, J.—The town of Mercer, defendant herein, is a village in the county of Mercer and incorporated under the provisions of article VI, chapter 91, Revised Statutes. In August, 1901, the board of trustees of the village submitted to the voters thereof a proposition to purchase a tract of land within its limits for use as a public square; and for that purpose to create a debt in the sum of $1,000. The proposition was carried at the election by the requisite majority. In pursuance of the authority conferred by said election, the said board of trustees purchased from the plaintiffs the lands in controversy, and the plaintiffs by several warranty deeds conveyed the same in fee simple to the defendant. The deeds are in the ordinary form and specify no particular purpose for which the lands are conveyed and recite a money consideration. The ground so conveyed by plaintiffs consisted of lots numbered 1, 8, and 7, in block 2, fronting east on State street. Plaintiffs also owned lots 2 and 3 in said block west of said lots conveyed to defendant on which they erected a store building facing the lots they sold to the defendant but about eight feet from the east line thereof. In June, 1902, the board of trustees made an order to inclose its said lands, called a public square, by a row of hitching racks on the north, east and south

sides thereof. On hearing of the order, the plaintiffs commenced this suit and obtained a temporary injunction restraining defendant from erecting said hitching racks. The court made a finding of facts which, as it is not objected to, we will adopt for the purposes of the case. It is as follows:

"(1) The ground bought by the defendant for public grounds of plaintiffs and others was ninety-four and one-fourth feet east and west by 264 feet north and south, and was bounded on the north, east and south by streets and on the west by land owned by plaintiffs and others. (2) That before the purchase of said land for public ground there had been a fire in the town of Mercer, which had destroyed a number of buildings among which was the store building of plaintiffs, which was situated on the north part of said public grounds, fronting east on State street. (3) That just before the purchase of said ground by the defendant, plaintiffs were about to erect a new storehouse on lot No. 1 and part of lot No. 8, being the north part of said public ground where their storehouse, recently burned, had stood and fronting east on State street. (4) That defendant proposed to plaintiffs and the other owners of said ground to buy the same for public grounds, and plaintiffs and other owners agreed to sell the same for that purpose to be forever kept and used as in the next paragraph stated. (5) That it was represented by the officers and agents of defendant who negotiated for said land and purchased the same, and understood by plaintiffs and by the citizens of said town (there being no evidence whatever to the contrary) that said land was to be forever dedicated and used for the following uses and purposes, viz.: To widen the street on the east of it so as to give more room for teams, to leave more open space so as to decrease the danger of fire, to leave it open and uninclosed so that the public could drive over and across it in all directions and farmers could drive onto it and leave their wagons and teams,

and eventually a public well was to be dug near the center to which the public could drive up with their teams.    (6)  That said ground was purchased of plaintiffs and others in 1901, for $3.33 per front foot, that the land so sold defendant by plaintiffs was worth from two to three times the amount paid; that is to say, the land bought by the defendant from plaintiffs was worth from $366.66 to $733.33 more than the amount paid. (7)  That plaintiffs agreed to sell, and did sell, at such reduced price in consideration of the said public use to which said land was to be dedicated, and it was a part of the consideration of said sale that said land should be so held and used as stated in paragraph five hereof. (8)  That from the time of said sale to the present, said land has been used by the public, and by the customers of the plaintiffs, with the assent of the officers and agents of defendant and the citizens of the said town generally in the manner stated in paragraph five, except only that said public well has not yet been dug. (9)  That after the purchase and dedication to public use, as stated in paragraphs five and eight, plaintiffs, in the fall of 1901, erected a storehouse costing about $4,000 on lot No. 2 and the north part of lot No. 3, directly west of the north part of said public ground and fronting said public ground.  This was in accordance with the understanding had with defendant's officers and agents when said sale was negotiated.   (10)  That since said sale and dedication plaintiffs with the understanding that said public ground was to be forever kept and used as stated in paragraph five, have purchased and are the owners of lot No. 5, directly west and adjoining the south part of said public ground.   (11) That since the purchase of said land by defendant the customers of plaintiff have had free access to drive with their teams and wagons over and across said ground to the front of the store of plaintiffs.   (12)   That defendant's board of trustees shortly before the commencement of this suit passed the following order and

ordinance, to-wit: 'Ordered that a hitchrack be placed upon the north and east and south sides of the public square upon the street lines,' and were threatening to so inclose said public ground on the north, east and south sides, and that if done the same would prevent the public and the customers of plaintiff from using said land as stated in paragraph five, from driving across or on the same and leaving their teams thereon, and would prevent the customers of plaintiffs from having any access to the front of their store with teams. (13) That plaintiffs are doing a large retail business in said store, largely with farmers who drive up to the front of the store with produce, and the inclosure of said public ground as threatened by defendant would greatly damage and injure plaintiffs' business and also their storebuilding, built since said ground was opened to said public use, and also the land purchased by plaintiffs since said opening to public use, fronts on said public ground. That the damage to plaintiffs' real estate would be several thousand dollars and the damage to their business would be large and irreparable but incapable of estimation or compensation.''.

Plaintiffs' contention is that the judgment of the court should be sustained on two grounds, viz.: First, because it was a part of the consideration of their deeds, made to the defendant, that the land should be used for a street and left open to the public; second, that the evidence shows a dedication to public use as a street.

In regard to the first contention, it is sufficient to state that the proposition involves a misapprehension of what constituted the consideration for the deeds, which recite a money consideration; and this is conceded to be a true recitation, but as it was the understanding that plaintiffs sold their land for less than its value for the reason that it was to be used as a street, it is argued, therefore, that the agreed use to which it was to be put was a part of the consideration for said deeds. It was competent to show an additional consideration to

that recited in the deeds provided it was a valuable consideration. Winningham v. Pennock, 36 Mo. App. 688; Miller v. McCoy, 50 Mo. 214; Laudman v. Ingram, 49 Mo. 212. But the agreement that the land was to be used as a street can not be construed as constituting any part of the consideration for it would be in contradiction of the granting clause of the deed and a limitation of the estate conveyed. It would have the effect of converting a fee simple estate to one for a limited use and revertible to the grantors. If such had been the intention of the parties the limitation should have been inserted in the conveyance as all prior and contemporaneous agreements were merged in the written instrument.

As to the question of dedication, it is conceded that the money was voted by the taxpayers of the town for the express purpose of buying the land for a public park and not a public street. Its use for a park is wholly inconsistent with its use as a street. The board of trustees of the village had no authority to divert the use of the property bought by the funds so obtained to any other purpose than that for which they were intended, and such purpose is to be ascertained from the official acts of the board, and not from the verbal expressions of its members.

In order to constitute dedication the city must do something officially evincing its intention in that respect. The mere fact that persons drove their teams over and secured them on the ground in question for the short length of time from the date of purchase to the institution of this suit, proves nothing. If this had continued for a sufficient length of time it might have created title in the public by prescription.

In the case of Rutherford v. Taylor, 38 Mo. 315, the county evinced its intention of dedicating to public use certain land situated in the town of Huntsville by a recorded plat of the town on which was marked, "public lots," which were used for many years as a public

square and on which a couurthouse was erected. The county afterwards undertook to sell a part of said block but the court held in a proceeding by the purchasers of the lot fronting on the block that it had been dedicated to a public square and that the county had no right to sell any part of it. And other cases cited, where applicable, announce a similar principle.

The plaintiffs' case rests upon an agreement with members of the board of trustees in the negotiations for the sale of the lots that they were to be used as a street and is not supported by a single official act of defendant or of a subsequent dedication for such purpose. In the first place, plaintiffs were not authorized to rely upon the individual statements of members of the board of trustees as to the use to which the land would be devoted. 15 Am. and Eng. Ency. of Law, 1028. They had it in their power to restrict the use of the property to street purposes. They delivered their deeds with full knowledge of their purport and a court of equity would refuse to afford them relief for the consequences of their own neglect.

For the reason given the cause is reversed. All concur.